**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE E. SCHARDT,
       *Petitioner-Appellant,*

v.

ALICE PAYNE,
       *Respondent-Appellee.*

No. 02-36164

D.C. No.
CV-02-00301-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted November 2, 2004
Submission Deferred November 3, 2004
Resubmitted May 9, 2005
Seattle, Washington

Filed July 8, 2005

Before: Arthur L. Alarcón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Washington, for the petitioner-appellant.

Diana M. Sheythe and John J. Samson, Assistant Attorney General, Office of the Washington Attorney General, Criminal Justice Division, Olympia, Washington, for the respondent-appellee.

David Zuckerman and Jeffery L. Fisher, NACDL Amicus Committee, Seattle, Washington, for amicus NACDL.

## OPINION

ALARCÓN, Senior Circuit Judge:

We must decide in this matter the novel question whether a Washington state prisoner may challenge the validity of his sentence retroactively on the ground that the trial court based its sentencing decision on facts that were not found to be true by a jury in violation of the constitutional principle subsequently announced by the United States Supreme Court in *Blakely v. Washington*, 124 S.Ct. 2531 (2004). We conclude that *Blakely* does not apply retroactively to convictions that became final prior to its publication. We also hold that the petitioner has failed to demonstrate that he was ineffectively represented by his trial counsel.

## I

Mr. Schardt was charged with one count of rape of a child in the first degree,[1] a class A felony under Washington law. The accusatory pleading alleges that Mr. Schardt had sexual intercourse with a child who was less than twelve years old from April 1, 1996 to April 22, 1997, a period of more than a year.

At trial, B.E. ("the victim") testified that Mr. Schardt committed numerous acts upon her person that come within Washington's definition of the term "sexual intercourse."[2] She

---

[1]Wash. Rev. Code § 9A.44.073 provides:

   (1)   A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.

   (2)   Rape of a child in the first degree is a class A felony.

[2]Wash. Rev. Code § 9A.44.010 defines sexual intercourse as follows:

   (1)   "Sexual intercourse"

stated that this conduct began sometime after she and her mother moved in with Mr. Schardt in early 1996. The victim testified that Mr. Schardt engaged in sexual intercourse with her several times a month. She described the various places in the residence where these acts occurred and the ways in which Mr. Schardt would position their bodies in order to engage in sexual intercourse. She testified that Mr. Schardt committed the last act of sexual intercourse on the morning of April 22, 1997.

The victim testified that on April 22, 1997, she was in bed when Mr. Schardt entered her room. He told her that she "owed" him. He took off her clothes, and placed Vaseline on his penis and attempted to insert it in her vagina. Mr. Schardt also touched her vagina with his mouth and fingers.

The victim's mother, testified that she lived with Mr. Schardt from March 1996 until the end of April 1997. The victim's mother stated that she took the victim to a hospital for a medical examination a day or so after the April 22, 1997 incident.

---

   (a) has its ordinary meaning and occurs upon any penetration, however slight, and

   (b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

   (c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

Under Washington law, therefore, a person can have sexual intercourse with a child, and thereby commit rape of a child, without penetration; for example oral sex comes within the statutory definition of sexual intercourse. *State v. Sardinia*, 713 P.2d 122, 126 (Wash. Ct. App. 1986).

A nurse practitioner testified that she examined the victim on April 25, 1997 and found "a notch" on her hymen which was "indicative of penetrating trauma, or attempted penetrating trauma" and consistent with sexual abuse.

In his defense, Mr. Schardt testified that as a result of an on-the-job injury to his back, he began taking muscle relaxants that impaired his ability to have an erection. He stated that this problem began to occur around January 1997. Mr. Schardt's counsel did not introduce any medical records into evidence regarding Mr. Schardt's complaint of erectile dysfunction.[3]

The judge's admonition to the jury contained the following instruction:

> There are allegations that the defendant committed acts of rape of a child in the first degree on multiple occasions. To convict the defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt. You need not unanimously agree that all the acts have been proved beyond a reasonable doubt.

Thus, the jury was not required to make a finding regarding whether Mr. Schardt had repeatedly committed rape of a child during the one-year period. Based on this instruction, the

[3]In support of his personal restraint petition, Mr. Schardt alleged that he told his trial lawyer "about [the] records maintained in the offices of Dr. Schiff which would support my assertion that I was having trouble maintaining a penile erection during the time period encompassed by the charging information." Ms. Sheryl McCloud, his appellate counsel, also filed a declaration in which she alleged that Mr. Schardt told her "that there were easily available reports of two physicians who were treating him . . . during the time period described in the charging information, who could verify his claim of inability to maintain a penile erection at the time of his charged crime."

members of the jury could have convicted Mr. Schardt if they agreed that only one act of rape had been proven beyond a reasonable doubt. The jury found Mr. Schardt guilty as charged.

The court determined that Mr. Schardt had a standard sentence range of 78 to 102 months under Washington's Sentencing Reform Act.[4] Under that statute, a court can increase the standard sentence if it finds that there are aggravating factors.[5] The judge must determine the existence of any aggravating factors "by a preponderance of the evidence." Wash. Rev. Code § 9.94A.530(2). These factors include:

> The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health. . . .
>
> . . .
>
> The current offense involved multiple victims or multiple incidents per victim.

---

[4]Wash. Rev. Code § 9.94A.510 (Table 1).

[5]Wash. Rev. Code § 9.94A.535 (2004) provides in part:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard sentence range shall be a determinate sentence unless it is imposed on an offender sentenced under RCW 9.94A.712. An exceptional sentence imposed on an offender sentenced under RCW 9.94A.712 shall be to a minimum term set by the court and a maximum term equal to the statutory maximum sentence for the offense of conviction under chapter 9A.20 RCW.

Wash. Rev. Code § 9.94A.535 (2004). The state trial court sentenced Mr. Schardt to serve 204 months in prison based on its findings of fact that:

1. The defendant was victim B.E.'s surrogate stepfather and/or father-figure and was one of two primary custodial parents during the entire span of time the offenses were committed.

2. The offenses were committed against B.E. over an approximately one year period when B.E. was between the ages of 10 years and 11 years old.

In its conclusions of law, the trial court stated:

1. In committing these offenses the defendant abused his position of trust and confidence as a surrogate stepfather and custodial parent.

2. The victim was, at the time of the offenses, particularly vulnerable and incapable of resistance due to her extreme youth.

3. The offenses committed were part of an ongoing pattern of sexual abuse of the same victim and involved multiple incidents over a prolonged period of time.

The Washington Court of Appeals affirmed Mr. Schardt's conviction in an unpublished opinion. Mr. Schardt did not petition the Washington Supreme Court for direct review. Mr. Schardt's personal restraint petition was dismissed by the Washington Court of Appeals. The Washington Supreme Court denied Mr. Schardt's motion for discretionary review of the personal restraint petition.

In his state prisoner petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, Mr. Schardt raised three arguments:

(1) his sentence violated the Sixth Amendment right to a jury trial as construed by *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) more than a preponderance of the evidence was required to enhance his sentence, and (3) his trial counsel was ineffective because he failed to discover and submit reports made by Mr. Schardt's treating physicians showing that he had complained of erectile dysfunction at the time of the alleged rapes. The district court denied the petition. The district court had jurisdiction over this petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, 2254. We have jurisdiction to review Mr. Schardt's timely appeal under 28 U.S.C. § 1291.

## II

Mr. Schardt contends that he received ineffective assistance of counsel at the guilt phase of his trial. We review de novo a district court's denial of habeas corpus relief. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). In order to prevail on his claim of ineffective assistance of counsel, Mr. Schardt "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Second, he must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Mr. Schardt correctly notes that to show prejudice under *Strickland*, he need only demonstrate "that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Wade v. Calderon*, 29 F.3d 1312, 1323 (9th Cir. 1994) (citing *Strickland,* 466 U.S. at 687), *overruled on other grounds by Rohan ex rel. Gates v. Woodford,* 334 F.3d 803, 815 (9th Cir. 2003). He argues that counsel's failure to introduce medical records reflecting his complaint of erectile dysfunction prejudiced him because such evidence would have corroborated his testimony, and impeached the victim's testimony regarding penile penetration. He asserts that the doctor's records would be particularly

persuasive, because "the reports were made before any allegations or charges of child rape or anything like it were ever brought forward. They were made at a time when there was no suspicion being cast upon Mr. Schardt."

In response, the State first points out that the medical reports did not show that Mr. Schardt's physician diagnosed him as suffering from erectile dysfunction. The medical reports merely record that Mr. Schardt had made "unproven, undiagnosed, and self-serving statements [to his treating physician] who did not have the expertise to diagnose or treat such a dysfunction." The State also notes that the victim described numerous ways in which Mr. Schardt had engaged in sexual intercourse with the victim as defined under Washington law that can be effected without an erection. Furthermore, Mr. Schardt did not complain of erectile dysfunction until after an accident in October 1996, but he was charged with committing rape during a period that began in April 1996.

[1] The record shows that at the time Mr. Schardt complained to his physician regarding erectile dysfunction, he had not been criminally charged. He asserts that it would be difficult for a jury to believe that he would lie to his physician about erectile dysfunction in a private setting before he was criminally charged with rape of a child, in an effort to protect himself against possible charges in the future. He also maintains that, while he complained of erectile dysfunction only midway through the period for which he was charged, and although some of the acts described by the victim could have been performed without erection, "witness credibility is so critical that it is outcome-determinative. It was in this context that [the victim] described Mr. Schardt attaining an erection and attempting penile-vaginal intercourse. If this were a medical impossibility for Mr. Schardt, it would cast doubt on all of the girl's allegations." Appellant's Opening Br. at 44.

[2] Evidence that Mr. Schardt complained to his treating physicians that he suffered from erectile dysfunction would

not have corroborated his denial of his criminal conduct that did not require penile penetration. The victim testified that Mr. Schardt molested her seven to ten times per month but that he attempted penile penetration only a few times. Admitting medical evidence that he complained of erectile dysfunction might well have been harmful to Mr. Schardt's defense because it would have supported the victim's testimony that Mr. Schardt rarely attempted penile penetration.

[3] Mr. Schardt has the burden of showing that there is a reasonable probability that his lawyer's failure to enter the doctor's note into evidence deprived him of a fair trial. He has failed to do so.

## III

Mr. Schardt also contends that the trial judge's decision to increase his sentence based on facts not found by the jury violated his Sixth Amendment right to a trial by jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

## A

Before we reach Mr. Schardt's contention about the application of *Apprendi* and *Blakely* to this case, we must first determine whether this issue is properly before us. After denying Mr. Schardt's petition for habeas corpus relief, the district court granted a certificate of appealability ("COA"). Its order states:

> The Court finds that petitioner is entitled to a certificate of appealability on the issues of (1) whether the petitioner adequately presented his claim that the federal due process clause requires a heightened standard of proof when a sentencing factor results in an exceptional sentence, and (2) whether the petitioner was denied effective assistance of counsel

because his attorney failed to discover and use exculpatory evidence.

The State contends that Mr. Schardt is precluded from raising the question whether the district court judge violated *Apprendi* by enhancing Mr. Schardt's sentence based solely on the trial court's findings because this issue is not clearly identified in the COA.

**[4]** We disagree with the State. Under Circuit Rule 22-1(d), as it existed when Mr. Schardt filed his appeal in this case, Mr. Schardt had thirty-five days from the district court's entry of its order denying a COA to seek a broader COA from this court.[6] Mr. Schardt did not file a motion requesting certification of additional issues on appeal within the specified thirty-five-day period. However, effective January 1, 2004, we amended Circuit Rule 22-1 to allow additional methods of seeking an expanded COA. Of particular importance to this case is new Circuit Rule 22-1(e), which allows a petitioner to brief uncertified issues in his or her brief to us, using separate headings in the brief for "certified issues" and "uncertified issues." Under this rule, we construe such briefing as a request for an expanded COA.

**[5]** We construe Circuit Rule 22-1(e) to apply to merits briefs filed in this court after the effective date of the rule. Mr. Schardt filed his supplemental brief addressed to the *Blakely* issue on August 2, 2004, seven months after its [the] effective

---

[6]At the time Mr. Schardt filed his appeal, Circuit Rule 22-1(d) read as follows:

> If the district court denies a certificate of appealability in part, the court of appeals will not consider uncertified issues unless petitioner first seeks, and the court of appeals grants, broader certification. Petitioners desiring broader certification must file, in the court of appeals, a separate motion for broader certification, along with a statement of reasons why a certificate should be granted as to any issues(s) within thirty-five days of the district court's entry of its order denying a certificate of appealability.

date [of the rule]. The State, however, points out that Schardt has not set off its discussion of the *Blakely* issue under a separate heading of "uncertified issues," as required by Circuit Rule 22-1(e). While we agree with the State that Schardt should have complied with this aspect of Circuit Rule 22-1(e), his noncompliance does not deprive us of jurisdiction to rule on his request for a COA. Indeed, in the circumstances of this case, Mr. Schardt's failure to provide a separate designation of his *Blakely* discussion as an "uncertified issue" could hardly have caused the confusion that this aspect of the rule is designed to prevent, for Mr. Schardt's supplemental brief is directed solely to the *Blakely* issue.

**B**

The validity of the sentencing issue presented in Mr. Schardt's case is virtually indistinguishable from the question reviewed by the Supreme Court in *Blakely*. In both cases, the judge imposed a sentence greater than the standard range specified in Washington's Sentencing Reform Act based on findings made by the judge, rather than the jury.

**[6]** In *Blakely*, the defendant pled guilty to kidnaping his estranged wife, a class B felony, which carried a maximum sentence of ten years. 124 S. Ct. at 2534.[7] Washington's Sentencing Reform Act specified a standard range of forty-nine to fifty-three months. *Id.* A Washington trial court enhanced Mr. Blakely's sentence based on its finding that he acted with "deliberate cruelty." *Id.* at 2534. Before the Supreme Court, Mr. Blakely argued "that this sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence." *Id.* at 2536. The Supreme Court agreed and held

---

[7]Wash. Rev. Code § 9A.20.021(1)(b) provides, "For a class B felony, by confinement in a state correctional institution for a term of ten years, or by a fine in an amount fixed by the court of twenty thousand dollars, or by both such confinement and fine."

that Mr. Blakely's sentence was invalid. *Id.* at 2538. The Supreme Court instructed:

> Our precedents make clear . . . that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id.* at 2537 (citations omitted) (emphasis in the original).

**[7]** Under Washington law the maximum sentence for a class A felony, such as the rape of a child, is life imprisonment.[8] Under Washington's Sentencing Reform Act, however, the standard sentence Mr. Schardt would have received for a conviction for a single count of rape of a child is 102 months.[9] In this matter the trial court doubled this sentence to 204 months based on its own independent findings of fact.

---

[8]Wash. Rev. Code § 9A.20.021 provides in part

Maximum sentences for crimes committed July 1, 1984, and after

(1) Felony. Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:

(a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment, or by a fine in an amount fixed by the court of fifty thousand dollars, or by both such confinement and fine . . . .

[9]Wash. Rev. Code § 9.94A.510 (Table 1).

Clearly, under *Blakely*, the state court erred in sentencing Mr. Schardt on the basis of facts not found to be true by a jury.

The critical distinction between this case and *Blakely* is that *Blakely* was decided by the Supreme Court on a writ of *certiorari* from the defendant's direct appeal of his conviction. *Id.* at 2536. Mr. Schardt's case comes before us as a collateral attack on his sentence. If Mr. Schardt's case were still pending on direct appeal when *Blakely* was decided, we would be compelled to hold that *Blakely* was applicable. *See Griffith v. Kentucky,* 479 U.S. 314, 322 (1987) ("[F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.").

A state prisoner whose conviction is final may not automatically have the rule from a subsequently decided case applied in a petition for habeas corpus pursuant to § 2254. *Teague v. Lane*, 489 U.S. 288, 310 (1989). Congress has mandated that "[a] claim presented in a second or successive habeas corpus application under [28 USCS § 2254] that was not presented in a prior application shall be dismissed unless . . . the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). We held in *Cook v. United States*, 386 F.3d 949 (9th Cir. 2004) that the Supreme Court has not made *Blakely* retroactive to cases on collateral review. *Id.* at 950.

**[8]** *Cook* does not control our decision here, however, because this is Mr. Schardt's initial petition, not a second or successive petition. In *Teague v. Lane,* the Court addressed the issue of whether a decision announced after a state prisoner's conviction becomes final can be applied retroactively. *Teague* lays out a three-part test for the retroactive application of a Supreme Court decision. *Teague*, 489 U.S. at 299-310. This process was reiterated in *Beard v. Banks*, 124 S. Ct. 2504 (2004) as follows:

> First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually "new." Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to non-retroactivity.

*Id.* at 2510 (citations and quotations omitted). The Court further explained that the two types of rules that are the exceptions to nonretroactivity are (1) "rules forbidding punishment of certain primary conduct or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense"; and (2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 2513 (citations, quotations and alterations omitted).

Before addressing each of these factors, we note that the Tenth Circuit has held that *Blakely* does not apply retroactively to cases on collateral appeal. *See United States v. Price,* 400 F.3d 844, 849 (10th Cir. 2005) (*Blakely* does not apply retroactively to petitions brought under 28 U.S.C. § 2255); *Young v. Neet,* No. 04-1441, 2005 U.S. App. LEXIS 5382, at *9 (10th Cir. April 5, 2005) (*Blakely* does not apply retroactively to petitions brought under 28 U.S.C. § 2254). Several other circuits have held that *United States v. Booker*, 125 S. Ct. 738 (2005), which extends the reasoning of *Blakely* to the federal sentencing guidelines, is not retroactive. *See Varela v. United States,* 400 F.3d 864, 868 (11th Cir. 2005) (*Booker* does not apply retroactively to petitions brought under 28 U.S.C. § 2255); *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005) (same); *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir. 2005) (same); *Guzman v. United States*, 404 F.3d 139, 144 (2d Cir. 2005) (2d Cir. April 8, 2005) (same).

We address each of the *Teague* factors in turn.

1. When did Mr. Schardt's conviction become final?

**[9]** Mr. Schardt's conviction became final on December 22, 2000, after *Apprendi* was decided on June 26, 2000, but well before *Blakely* was announced on June 24, 2004.

2. Did *Blakely* announce a new rule?

We have previously held that *Apprendi* announced a new rule. *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir. 2000). Mr. Schardt may have the benefit of the new rule announced in *Apprendi*, because his case was not final when *Apprendi* was decided. *See Griffith,* 479 U.S. 328 (when a Supreme Court decision results in a new rule, that rule applies to cases still pending on direct appeal). If *Blakely* created a new rule, however, Mr. Schardt cannot have the benefit of that rule because his conviction was final when *Blakely* was announced, unless his claim fits within the *Teague* exceptions. We therefore must determine whether *Blakely* created a new rule.

In *Teague*, the Supreme Court instructed as follows:

> It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.

*Teague*, 489 U.S. at 301 (citations omitted).

Mr. Schardt contends that *Blakely* did not announce a new rule. Instead, he argues that in *Blakely*, the Court simply applied the rule set forth in *Apprendi*. In support of this argument, he quotes the following language from *Blakely*:

> This case requires us to apply the rule we expressed in *Apprendi* . . . .
>
> . . . In *Ring v. Arizona* . . . we applied *Apprendi* to an Arizona law that authorized the death penalty if the judge found one of ten aggravating factors. . . .
>
> . . . Our commitment to *Apprendi* in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. . . .
>
> . . . Those who would reject *Apprendi* are resigned to one of two alternatives.

*Blakely*, 124 S. Ct. at 2536-39.

The State argues that the Court created a new rule in *Blakely*. In support of this argument, the State points to *Simpson v. United States*, 376 F.3d 679 (7th Cir. 2004) in which the Seventh Circuit held that *Blakely* did more than just apply *Apprendi*; it created a new rule that was not compelled by *Apprendi* or its progeny. *Id.* at 681.

In *Beard*, the Supreme Court recently revisited the question whether a case creates a new rule. The Court instructed: "We must . . . ask 'whether the rule later announced . . . was *dictated* by then-existing precedent — whether, that is, the unlawfulness of [the] conviction was apparent to all reasonable jurists.' " 124 S. Ct. at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)) (emphasis in the original).

**[10]** Every circuit court of appeals that addressed the question presented in *Blakely* reached the opposite conclusion from the rule subsequently announced by the Supreme Court. *See, e.g., United States v. Hughes,* 369 F.3d 941, 946-47 (6th Cir. 2004) (once the jury has determined guilt, the judge may

give the defendant a sentence of up to the statutory maximum based on findings made by the judge by a preponderance of the evidence); *United States v. Francis*, 367 F.3d 805, 820 (8th Cir. 2004) (same); *United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004); *United States v. Alvarez*, 358 F.3d 1194, 1211-12 (9th Cir. 2004) (same); *United States v. Phillips*, 349 F.3d 138, 143 (3rd Cir. 2003) (same); *United States v. Patterson*, 348 F.3d 218, 228-29 (7th Cir. 2003) (same); *United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002) (same); *United States v. Sanchez*, 269 F.3d 1250, 1267-69 (11th Cir. 2001) (same); *United States v. Webb*, 255 F.3d 890, 898 (D.C. Cir. 2001) (same); *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (same); *United States v. Caba*, 241 F.3d 98, 101 (1st Cir. 2001) (same); *United States v. Garcia*, 240 F.3d 180, 183-84 (2nd Cir. 2001) (same). Thus, the rule announced in *Blakely* was clearly not apparent to all reasonable jurists, nor was it dictated by precedent.

3.   Did *Blakely* create a new substantive rule?

In its *amicus* brief, the NACDL argues that the rule in *Blakely* is a new substantive rule, rather than a procedural rule.[10]

> New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a

---

[10]Mr. Schardt maintains that *Apprendi* should apply to his case because the "*Apprendi/Blakely* burden of proof holding is substantive and exempt from *Teague* for that . . . reason" and also that "the burden of proof holding is watershed and exempt from *Teague* for that second additional reason." But in making this argument, Mr. Schardt has confused *Teague's* requirements. To prevail, he does not need to persuade us that *Apprendi* is an exception to the rule in *Teague*; *Apprendi* was decided while Mr. Schardt's case was still on direct review. Therefore, the rule announced in *Apprendi* can be asserted by Mr. Schardt in a § 2254 petition. *Griffith*, 479 U.S. at 328. The real issue in this appeal, however, as correctly noted in the *amicus* brief, is whether *Blakely* applies retroactively. Although the headings of his arguments that *Apprendi* is substantive and a watershed rule lump *Blakely* in with *Apprendi*, his brief addresses only *Apprendi*. The *amicus* brief correctly focuses on *Blakely*.

criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.

*Schriro v. Summerlin,* 124 S. Ct. 2519, 2522-23 (2004) (citations, quotations and footnotes omitted) (emphasis in the original).

The *amicus* brief maintains that the principle announced in *Blakely* is a substantive rule because it holds that the jury must make findings that enhance a sentencing decision. We disagree. The Supreme Court has instructed that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules . . . ." *Schriro,* 124 S. Ct. at 2523. *Blakely* allocated some of the decision-making authority previously held by judges to juries. *Blakely*, 124 S. Ct. at 2537. It is therefore a procedural rule.

4. Did *Blakely* announce a watershed procedural rule?

**[11]** New procedural rules generally do not apply retroactively, unless they amount to " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague,* 489 U.S. at 311). To fit within this exception, the rule must be one "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313. *Blakely* did not announce a watershed rule of criminal procedure. The Tenth Circuit has recently explained:

First, *Blakely* does not affect the determination of a defendant's guilt or innocence. Rather, it addresses

only how a court imposes a sentence, once a defendant has been convicted.

Further, the Supreme Court has previously determined that a change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based did not announce a watershed rule of criminal procedure. *See Summerlin*, 124 S. Ct. at 2524-26. Similarly, we have previously held that a change in the law requiring juries to find these sentencing facts beyond a reasonable doubt, rather than by a preponderance of the evidence, also does not announce a watershed rule of criminal procedure. *See United States v. Mora*, 293 F.3d 1213, 1219 [10th Cir. 2002](holding *Apprendi*, including its quantum of proof requirement, did not announce watershed rule); *see also Sepulveda v. United States*, 330 F.3d 55, 61 (1st Cir. 2003) (holding, in addressing *Apprendi's* retroactivity, that " 'a decision . . . by a judge (on a preponderance standard) rather than a jury (on the reasonable-doubt standard) is not the sort of error that necessarily undermines the fairness . . . of judicial proceedings,' " quoting *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir 2002)); *Coleman v. United States*, 329 F.3d 77, 88-90 (2d Cir. 2003) (rejecting argument that *Apprendi's* requiring Government to prove sentencing factors beyond a reasonable doubt was watershed rule of criminal procedure).

*Price*, 400 F.3d at 848-49 (footnotes omitted). We agree with this analysis. We hold that *Blakely* did not announce a watershed rule of criminal procedure.

## C

**[12]** Mr. Schardt also contends that he is entitled to relief under 28 U.S.C. § 2254(d)(1). Under this statute, a state pris-

oner is entitled to relief if his case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The rule established in *Blakely* — that the statutory maximum is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, rather than facts found by the judge — was **not** clearly established by a Supreme Court decision at the time Mr. Schardt's case became final on direct appeal. It was a new rule, as explained above. We have held that if a case creates a new rule under *Teague*, then it is not a clearly established rule under 28 U.S.C. § 2254(d)(1). *See Himes v. Thompson,* 336 F.3d 848, 855 n.4 (9th Cir. 2003) (explaining that because a defendant's case was adjudicated prior to a decision that announced a rule he wanted applied in his case, 28 U.S.C. § 2254(d)(1) would bar the application of that rule if that case established a new rule of constitutional law according to the principles of *Teague v. Lane*); *see also Vasquez v. Strack*, 228 F.3d 143, 149 (2d Cir. 2000) (noting that if a rule is a new rule under *Teague*, it is not clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1)). Thus, Mr. Schardt's argument under 28 U.S.C. § 2254(d)(1) also fails.

**D**

Mr. Schardt further asserts that "[f]ederal due process law should also compel the conclusion that *Blakely* must apply retroactively to this case. . . . [I]t is impermissible for the state courts to deny a criminal defendant a forum in which to raise the fact that he was convicted without the state proving all of the pre-existing elements beyond a reasonable doubt — and aggravating sentencing factors are akin to pre-existing elements." In support of this argument, Mr. Schardt relies on *Fiore v. White*, 531 U.S. 225 (2001), and *Bunkley v. Florida*, 538 U.S. 835 (2003). These cases are readily distinguishable. In *Fiore*, the defendant was convicted of operating a hazardous waste facility without a permit pursuant to Title 35

§ 6018.401(a) of the Pennsylvania code. 531 U.S. at 226-27.
In fact, he had a permit, but he operated the dump in a way
that violated its terms. *Id*. at 227. After his conviction became
final, the Pennsylvania Supreme Court interpreted the relevant
statute in such a way that it became clear that Mr. Fiore
should not have been convicted as charged. His conduct was
not proscribed by the statute, because it applied solely to per-
sons operating a hazardous waste facility without a permit. *Id*.
at 226-27. The Pennsylvania Supreme Court further held that
this rule was not new, but had always been the correct inter-
pretation of the law. *Id*. at 228. The Supreme Court of the
United States reversed the defendant's conviction holding that
"[w]e have held that the Due Process Clause of the Fourteenth
Amendment forbids a State to convict a person of a crime
without proving the elements of that crime beyond a reason-
able doubt." *Id*. at 228-29 (citation omitted).

In *Bunkley*, the defendant was convicted of first degree bur-
glary. 538 U.S. at 837. His charge was based in part on the
fact that he had a pocket knife with a blade 2-1/2 to 3 inches
long, which the trial court considered a "dangerous weapon."
*Id*. at 836-37. After he was convicted, the Florida Supreme
Court interpreted the meaning of "dangerous weapon" in *L.B.
v. State,* 700 So. 2d 370 (Fla. 1997) (per curiam). It held that
a knife with a blade of 3-3/4 inches did not constitute a dan-
gerous weapon within the meaning of the statute. *Bunkley,*
538 U.S. at 837. The defendant in *Bunkley* filed a motion for
postconviction relief, based on the court's holding in *L.B.* The
Florida Supreme Court denied the motion, holding that its
decision did not apply retroactively. *Id*. at 838. It held,
instead, that the decision in *L.B.* (holding that a knife of 3-3/4
inches was not a dangerous weapon) was "a change in the law
which culminated the century-long evolutionary process." *Id*.
at 841 (citations and alterations omitted). Applying the rule
announced in *Fiore*, the United States Supreme Court vacated
the state court judgment. The Court explained its reasoning as
follows:

> For the first time, the Florida Supreme Court interpreted the common pocketknife exception, and its interpretation covered the weapon Bunkley possessed at the time of his offense. In the face of such doubt, *Fiore* entitles Bunkley to a determination as to whether *L. B.* correctly stated the common pocketknife exception at the time he was convicted.

*Id.*

**[13]** Mr. Schardt contends that, after *Apprendi*, exceptional sentencing factors are facts akin to elements that must be proved beyond a reasonable doubt. Therefore, he argues the trial court's finding was unconstitutional in 1999. This argument is unpersuasive. No court has ruled that Mr. Schardt's *conduct* was beyond the power of the criminal law to punish. Unlike the circumstances in *Bunkley*, it is clear that the trial judge's sentencing decision in this matter did not violate any constitutional principle announced by the United States Supreme Court before his sentence became final. The Supreme Court announced a new rule in *Blakely* — one that worked a significant change in the law as it was understood up to that point.

## Conclusion

**[14]** We conclude that Mr. Schardt failed to demonstrate that he was denied the effective assistance of counsel. We also hold that the Supreme Court announced a new rule in *Blakely v. Washington* that does not apply retroactively to a conviction that was final before that decision was announced. Therefore, the state court's sentencing decision cannot be challenged in a petition for habeas corpus.

**AFFIRMED**.