64 Cal.Rptr.3d 281 (2007)
153 Cal.App.4th 1516
In re Sotero GOMEZ, on Habeas Corpus.
No. B197980.
Court of Appeal of California, Second District, Division Two.
August 7, 2007.
*282 Vincent James Oliver for Petitioner Sotero Gomez.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Carl N. Henry, Deputy Attorneys General, for Respondent the People.
BOREN, P.J.
In Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington (2004) 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), the high court stated that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."
In Cunningham v. California (2007) ___ U.S. ___, 127 S.Ct. 856, 868, 166 L.Ed.2d 856 (Cunningham), the high court stated, "In accord with Blakely, ... the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." The court invalidated the California determinate sentencing law (DSL) to the extent it authorized the trial court to impose an upper term sentence based on facts that were found by the court, rather than by a jury beyond a *283 reasonable doubt. (Cunningham, supra, at p. 871,127 S.Ct. 856.)[1]
Petitioner Sotero Gomez has filed a petition for writ of habeas corpus in this court, after the denial of his petition for writ of habeas corpus in the superior court. He claims that Cunningham should be applied retroactively to his upper term sentence, which was imposed after Blakely was decided but before the decision in Cunningham. We issued an order to show cause. We conclude that Cunningham is not to be applied retroactively to cases already final when it was decided.

BACKGROUND
Gomez was convicted by jury of rape by force or fear (Pen.Code, § 261, subd. (a)(2)) and was sentenced to prison in July 2004, shortly after the issuance of the Blakely decision. At sentencing, the trial court overruled Gomez's Blakely objection and imposed the eight-year upper term. In imposing the upper term, the trial court found the following factors in aggravation: the victim, appellant's daughter, was particularly vulnerable; the crime was vicious and callous; appellant threatened witnesses and tried to dissuade the victim; he took advantage of a position of trust and confidence; he engaged in a common scheme or plan to use his three daughters to satisfy his own sexual appetites; and the victim was under 18, a fact which had been found by the jury under the clear and convincing evidence standard. The court found in mitigation that Gomez had no significant prior record.
Gomez appealed, challenging his sentence as a violation of the Sixth Amendment and of Blakely. On September 8, 2005, in an unpublished opinion (People v. Gomez, No. B177065, 2005 WL 2158862), we affirmed the judgment. Our opinion relied upon People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Black) (judgment vacated and matter remanded in Black v. California (2007)  U.S ___, 127 S.Ct. 1210, 167 L.Ed.2d 36; see People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (opn. on remand)), where the California Supreme Court held that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (Black, supra, at p. 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534.)
On January 22, 2007, in Cunningham. the United States Supreme Court rejected the California Supreme Court's conclusion in Black. After Cunningham was decided, Gomez filed a habeas corpus petition in the superior court, citing Blakely and Cunningham and stating that the trial court had sentenced him to the upper term without a finding of aggravating factors by the jury beyond a reasonable doubt. The superior court denied the petition on March 29, 2007, ruling that Gomez's case had become final over a year before Cunningham was decided and that Cunningham, should not be given retroactive application.

DISCUSSION
We must decide whether Cunningham applies retroactively on collateral review to a case that was already final on direct review when Cunningham was decided.[2]
"Under the [] framework [of Teague v. Lane (1989) 489 U.S. 288, 109 *284 S.Ct. 1060, 103 L.Ed.2d 334 (Teague) ], an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. [Citation.] A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a `"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' [Citations.]" (Whorton v. Bockting (2007) ___ U.S. ___, 127 S.Ct. 1173, 1180-1181, 167 L.Ed.2d 1 (Whorton).)
The rule set forth in Blakely is neither a substantive rule nor a watershed rule of criminal procedure. (In re Consiglio (2005) 128 Cal.App.4th 511, 514-516, 27 Cal.Rptr.3d 167; People v. Anions (2005) 125 Cal.App.4th 855, 864-865, 22 Cal. Rptr.3d 908; see Schardt v. Payne (9th Cir.2005) 414 F.3d 1025, 1036.) It follows that the rule in Cunningham, too, is neither substantive nor a watershed rule. Thus, under Teague, if Cunningham sets forth a new rule it cannot be applied in this collateral proceeding; if it did not announce a new rule, its holding can be applied retroactively. (Whorton, supra, ___ U.S. at p. ___, 127 S.Ct. at p. 1180.) The question, then, is whether the rule set forth in Cunningham is a new rule of criminal procedure.
"It is admittedly often difficult to determine when a case announces a new rule.... In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. [Citation.]" (Teague, supra, 489 U.S. at p. 301, 109 S.Ct. 1060; accord, Whorton, supra, ___ U.S. at p. ___, 127 S.Ct. at p. 1181.)
In Whorton, the United States Supreme Court considered whether the rule announced in Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (Crawford)[3] was retroactive to cases already final on direct review. The high court determined that Crawford clearly announced a new rule, since it was "flatly inconsistent with the prior governing precedent, ... which Crawford overruled." (Whorton, supra, ___ U.S. at p. ___, 127 S.Ct. at p. 1181.)
In Schriro v. Summerlin (2004) 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442, the United States Supreme Court considered whether the rule announced in Ring v. Arizona (2002) 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (Ring)[4] was retroactive to cases final on direct review. The high court began its retroactivity discussion based on the premise that Ring announced a new rule after observing that, in applying Apprendi to the situation in Ring, it had "specifically overruled" an *285 earlier decision holding to the contrary. (Summerlin, supra, at pp. 351, 352-353, 124 S.Ct. 2519.)
"The explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult, however, to determine whether [a case] announce[s] a new rule when a decision extends the reasoning of [] prior cases." (Saffle v. Parks (1990) 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (Saffle).) The Supreme Court has stated the test for whether a rule "is actually `new'" (Beard, supra, 542 U.S. at p. 411, 124 S.Ct. 2504) as follows: "We must therefore assay the legal landscape as of [the time the defendant's conviction became final] and ask `whether the rule later announced [] was dictated by then-existing precedentwhether, that is, the unlawfulness of [the] conviction was apparent to all reasonable jurists.' [Citation.]" (Id. at p. 413, 124 S.Ct. 2504.) "[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is `controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under Teague. Courts frequently view their decisions as being `controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts." (Butler v. McKellar (1990) 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (Butler).)[5]
In Butler, the United States Supreme Court concluded that the rule announced in Arizona v. Roberson (1988) 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (Roberson)[6] was a new rule, explaining, "In Roberson, for instance, the Court found Edwards [v. Arizona (1981) 451 U.S. 477, 101 S.Ct, 1880, 68 L.Ed.2d 378] controlling but acknowledged a significant difference of opinion on the part of several lower courts that had considered the question previously. [Citation.] That the outcome in Roberson was susceptible to debate among reasonable minds is evidenced further by the differing positions taken by the judges of the Courts of Appeals for the Fourth and Seventh Circuits noted previously. It would not have been an illogical or even a grudging application of Edivards to decide that it did not extend to the facts of Roberson, We hold, therefore, that Roberson announced a `new rule.'" (Butler, supra, 494 U.S. at pp. 414-415, 110 S.Ct. 1212.)
Similarly, in U.S. v. Cruz (9th Cir.2005) 423 F.3d 1119, 1120, the Ninth Circuit Court of Appeals stated, "Given the dissenting opinions in [United States v.] Booker [(2005) 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621] and the previous cases, it is apparent that the [Booker] rule was not in fact `apparent to all reasonable jurists,' and thus, under the Supreme Court's definition, *286 it was in fact a `new rule.' [Citation.]"
The rule set forth in Cunningham was not "`apparent to all reasonable jurists.'" (Beard, supra, 542 U.S. at p. 413,124 S.Ct. 2504.) Prior to the California Supreme Court's ruling in Black, differing positions were taken by justices of the California Courts of Appeal on the issue of whether Blakely invalidated the DSL, and many pre-Black opinions held that Blakely did not invalidate the California sentencing scheme. Further, given the decision of the California Supreme Court in Black and, indeed, the dissents in Cunningham itself by three members of the high court, "the outcome in [Cunningham] was susceptible to debate among reasonable minds." (Butler, supra, at p. 415, 110 S.Ct. 1212; see Beard, supra, 542 U.S. at pp. 415-416, 124 S.Ct. 2504; Sawyer v. Smith (1990) 497 U.S. 227, 237, 110 S.Ct. 2822, 111 L.Ed.2d 193.) It is readily apparent, therefore, that Cunningham announced a new rule of law. As such, since the rule is procedural and is not a watershed rule, it is not to be applied retroactively on collateral review to cases already final when it was announced. (Whorton, supra, ___ U.S. at p. ___, 127 S.Ct. at p. 1180.)[7]
Accordingly, Gomez has not established that he is entitled to the relief he seeks.

DISPOSITION
The petition for writ of habeas corpus is denied.
We concur: DOI TODD and CHAVEZ, JJ.
NOTES
[1] Penal Code section 1170, subdivision (b) of the DSL has since been amended in response to the Cunningham decision to provide that the trial court has the discretion, in the interests of justice, to impose any of the three terms provided by statute. (Stats.2007, ch. 3, signed into law as an urgencv measure on Mar. 30, 2007.)
[2] It is undisputed that Gomez's conviction was final when the decision in Cunningham was issued. "State convictions are final `for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' [Citations.]" (Beard v. Banks (2004) 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (Beard).)
[3] In Crawford, the high court held that that testimonial hearsay statements are admissible under the Confrontation Clause only where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine. (Crawford, supra, 541 U.S. at p. 68, 124 S.Ct. 1354.)
[4] In Ring, the United States Supreme Court held that the Arizona procedure for imposing the death penalty violated Apprendi because the requisite findings in aggravation were made by the trial court without a jury. (Ring, supra, 536 U.S. at p. 609, 122 S.Ct. 2428.)
[5] The consideration of "reasonable contrary conclusions reached by other courts" (Butler, supra, 494 U.S. at p. 415, 110 S.Ct. 1212) gives deference "to the underlying purposes of the habeas writ. Foremost among these is ensuring that state courts conduct criminal proceedings in accordance with the Constitution as interpreted at the time of the proceedings. [Citation.]" (Saffle, supra, 494 U.S. at p. 488, 110 S.Ct. 1257.) "The `new rule' principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." (Butler, supra, at p. 414, 110 S.Ct. 1212.) "The rule that prohibits retroactive application of a new law not in existence at the time a conviction became final supports the principle of finality, which is essential to the operation of our criminal justice system. [Citations.]" (People v. Anions, supra, 125 Cal. App.4th al p. 864, 22 Cal.Rptr.3d 908.)
[6] In Roberson, the high court held that the Fifth Amendment bars interrogation by police after a suspect has requested counsel in the context of a separate investigation. (Roberson, supra, 486 U.S. at pp. 681-682, 108 S.Ct. 2093.)
[7] We need not, therefore, address Gomez's claims that "Cunningham should be retroactive" to Apprendi, to Jones v. United States (1999) 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311, a case predating Apprendi, or even to 1977, when the DSL went into effect.