Filed 7/15/13  In re Pulido CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MICHAEL PULIDO on Habeas Corpus. | A136960<br><br>(San Mateo County<br>Super. Ct. No. SC29805) |

In this original proceeding, petitioner Michael Pulido seeks habeas relief under *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407, 132 S.Ct. 2455] (*Miller*) [holding that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments].[1]  We shall grant the petition for writ of habeas corpus, vacate the sentence, and remand for resentencing in a manner consistent with the views expressed in this opinion.

---

[1]  Although a court of review "may refuse to issue a writ of habeas corpus when it appears that the application should have been first made in the lower court," we have decided to entertain this matter in the first instance because the petition raises important legal issues concerning the constitutionality of juvenile sentencing procedures.  (*In re Moss* (1985) 175 Cal.App.3d 913, 922 ["intervention is proper by this court in the first instance because the issues raised involve fundamental due process rights [and] it affords us the opportunity to provide guidance to the trial court"].)

BACKGROUND

In *People v. Pulido*,[2] we affirmed the judgment and sentence imposed on Pulido after a jury found him guilty of first-degree felony murder with special circumstances, robbery and auto theft. The crimes were committed in May 1992 and resulted in the death of a gas station convenience store cashier who was shot in the face with a .45-caliber bullet. The trial court sentenced Pulido, who was 16 years of age when he committed the crimes, to life without possibility of parole (LWOP). On appeal, we rejected Pulido's contention the LWOP sentence was disproportionately severe in relationship to his culpability, thereby constituting cruel and unusual punishment. We noted Pulido "was sentenced pursuant to Penal Code, section 190.5, subdivision (b), which gives the court discretion to choose between a sentence of life without possibility of parole, or 25 years to life, when the defendant was between 16 and 18 years old at the time of commission of the crime and the jury finds true one or more special circumstances enumerated in Penal Code section 190.2."[3] (*People v. Pulido, supra,* 1st Appellate District ISYS Data Base, p. 6.)

In October 2012, Pulido filed this habeas petition, contending that the high court's decision in *Miller* requires a re-examination of the constitutionality of his LWOP punishment. We granted Pulido's request for appointment of counsel and requested an informal response from the Attorney General. Subsequently we issued an order to show cause and granted an application by Human Rights Watch (HRW) to file an amicus brief. The Attorney General filed a return to the petition on April 19, 2013. Pulido filed a traverse on May 30, 2013. No party requested oral argument and the cause was immediately submitted for decision. We now grant the petition for writ of habeas corpus.

---

[2]  See *People v. Pulido* (Apr. 25, 1996, A065850), review granted and opn. superseded by *People v. Pulido* (July 24, 1996, S053965), and affirmed by *People v. Pulido* (1997) 15 Cal.4th 713.

[3]  Further statutory references are to the Penal Code unless otherwise noted.

DISCUSSION

## A.	*Legal Framework*

In *Roper v. Simmons* (2005) 543 U.S. 551, 574–575, the Unites States Supreme Court held that imposing the death penalty on juvenile offenders older than 15 years but younger than 18 years is cruel and unusual punishment precluded by the Eighth Amendment. In *Graham v. Florida* (2010) 560 U.S. 48, ___ [176 L.Ed.2d 825, 845, 130 S.Ct. 2011, 2030], the court extended the constitutional limitations on juvenile punishment, holding that the Eighth Amendment "forbids the sentence of life without parole" for a juvenile offender who did not commit homicide.

Most recently, in *Miller* the Supreme Court held any sentencing scheme that "mandates life in prison without possibility of parole for juvenile offenders" is forbidden under the Eighth Amendment. (*Miller, supra,* 183 L.Ed.2d 407, 424, 132 S.Ct. 2455, 2469.) The court reasoned: "*Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult. To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." (*Id.* at pp. 422–423.)

The court added, "[G]iven all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think

3

appropriate occasions for sentencing juveniles to this harshest possible penalty *will be uncommon*. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citations.] Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Miller, supra,* 183 L.Ed.2d 407, 424, 132 S.Ct. 2455, 2469, italics added.) In short, before a sentencing court imposes a sentence of life without the possibility of parole upon a juvenile offender, it must, in accordance with *Miller*, articulate its reasons in sufficient detail for appellate review.

Under California law, "[t]he penalty for a person convicted of first degree murder with one or more special circumstances found true, who was 16 years of age or older and under the age of 18 years at the time of the commission of the murder, shall be confinement in the state prison for [LWOP] or, at the discretion of the court, 25 years to life." (§ 190.5, subd. (b).) Courts have interpreted section 190.5 to mean LWOP is the statutorily identified *presumptive* punishment for a 16- or 17-year-old special circumstance murderer under section 190.5, unless a sentencing court, in the exercise of its discretion, finds good reason to impose a less severe sentence of 25 years to life. (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1089; *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141–1142.)

California appellate courts, addressing appeals from juveniles challenging the imposition of LWOP sentences as unconstitutional under *Miller*, have split on the issue. Some courts affirmed the LWOP judgment, reasoning the record showed the trial court did not presumptively impose LWOP, but rather exercised informed discretion to arrive at an LWOP sentence. (See, e.g., *People v. Gutierrez* (2012) 147 Cal.Rptr.3d 249, 260 [noting § 190.5 "does not require a mandatory LWOP sentence and vests sentencing courts with the discretion to sentence the defendant to a term of 25 years to life with possibility of parole"], review granted and opn. superseded by *People v. Gutierrez* (Jan.

4

3, 2013, S206365) 150 Cal.Rptr.3d 567, 290 P.3d 1171.) Other courts vacated the LWOP sentence and remanded for resentencing, reasoning that in applying the judicially construed, statutory presumption LWOP is the appropriate term for a 16- or 17-year-old defendant, the trial court failed to exercise its discretion in the manner required by *Miller*. (See, e.g., *People v. Moffett* (2012) 148 Cal.Rptr.3d 47, 55, review granted and opn. superseded by *People v. Moffett* (Jan. 3, 2013, S206771) 150 Cal.Rptr.3d 567, 290 P.3d 1171); *People v. Siackasorn* (2012) 149 Cal.Rptr.3d 918, 923, review granted and opn. superseded by *People v. Siackasorn* (Mar. 20, 2013, S207973) 154 Cal.Rptr.3d 73, 296 P.3d 974.)[4]

## B.      Analysis

Pulido asserts he is entitled to habeas relief under *Miller* on two separate grounds. First, he contends California's presumption of LWOP for any special circumstance murder committed by a juvenile violates the command of *Miller* that such sentences must be the exception rather than the norm. Second, he contends his sentence must be vacated because the trial court did not adequately consider the distinctive mitigating circumstances of his youth and background, as required by *Miller.*

As to the first ground asserted for relief, the record here shows neither defense counsel, the prosecutor nor the trial court referred to LWOP as the presumptive punishment in the case, or gave any indication they viewed it as such; rather, the record indicates the court understood it had discretion to impose either a sentence of 25 years to life or an LWOP sentence. Nevertheless, we conclude Pulido is entitled to habeas relief on the second ground asserted. The record demonstrates the sentencing judge imposed LWOP based on his understandable sympathy for the victim, whom he described as "a hard working, young man from Mexico" who held several jobs and "obviously hoped for more than life gave him." Also, the sentencing judge imposed LWOP based on his

---

[4] Granting review in *People v. Gutierrez,* the California Supreme Court stated the issue to be briefed and argued as follows, "Does the sentence of life without parole imposed on this juvenile offender under Penal Code section 190.5, subdivision (b), violate the Eighth Amendment under *Miller v. Alabama* (2012) ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407?" (*People v. Gutierrez* (Jan. 3, 2013, S206365) 150 Cal.Rptr.3d 567, 290 P.3d 1171.)

judgment the evidence showed Pulido was the shooter, stating, "There is no question in my mind, whatsoever, that this defendant . . . shot the victim. He had the gun before. He had the gun afterwards. And since then he has distinguished himself in custody by formulating plans for an escape, apparently[,] and evidencing no remorse whatsoever."[5] For those reasons, the court stated, "I can see no reason to, in effect, do anything to thrust this man back in society." Patently, prior to imposing LWOP, the sentencing judge did not focus on the factors now constitutionally mandated under *Miller*, in particular the offender's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." (*Miller, supra,* 183 L.Ed.2d 407, 423, 132 S.Ct. 2455, 2468.) In sum, because *Miller* refocused the sentencing decision on "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (*id.* at p. 424) and the trial court did not consider the "hallmark features" of youth now mandated under *Miller* (*id.* at p. 423), we conclude habeas relief is warranted in this case.[6]

The Attorney General (AG), however, contends habeas relief should be denied because Pulido has failed to exhaust a statutory remedy for the relief he seeks and his Eighth Amendment claim is not ripe until he has done so. The statutory remedy, according to the Attorney General, lies in the Legislature's 2012 enactment of section 1170, subdivision (d)(2), providing a recall procedure for an LWOP sentence after a period of 15 years. (See § 1170, subd. (d)(2)(A)(i) ["When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for

---

[5] The jury deadlocked on the special allegations defendant used a firearm and inflicted great bodily injury and the court declared a mistrial on those special allegations.

[6] The Attorney General apparently acknowledges, since she does not argue to the contrary, that *Miller* applies on state postconviction review because it announced a new rule of constitutional law " 'implicating the fundamental fairness . . . of the criminal proceeding' " (*Schardt v. Payne* (2005) 414 F.3d 1025, 1034), and that Pulido's claim is cognizable on this successive habeas petition because it relies on an intervening "change in the law." (*In re Harris* (1993) 5 Cal.4th 813, 841.)

recall and resentencing."].) The Attorney General's contention is not persuasive. In this regard, there is no evidence the Legislature enacted section 1170, subdivision (d)(2) in response to *Miller*;[7] moreover, the concerns addressed in section 1170, subdivision (d)(2) are not coextensive with the concerns addressed in *Miller*, and under *Miller* the trial court is required to consider the specified factors prior to imposing sentence, not after a juvenile has served 15 years. We should not delay correcting the improper sentence assessment in this case for a legislatively determined period of years. Relief under *Miller* should not be placed on pause so we can assess the sentence years later. In sum, and contrary to the Attorney General's contention, the procedures for review of juvenile LWOP sentences under section 1170, subdivision (d)(2) do not moot petitioner's constitutional claim under *Miller* or mean it is not yet ripe for review.

## DISPOSITION

The petition for habeas corpus is granted. Petitioner's LWOP sentence is vacated and the matter is remanded for resentencing.[8]

---

[7] The motion for judicial notice filed by amicus curiae Human Rights Watch, on February 20, 2013, is granted; we take judicial notice of Senate Committee on Public Safety, Bill Analysis of Senate Bill No. 9 (2011–2012 Reg. Sess.) April 4, 2011, a copy of which was attached to the motion.

[8] Pulido contends he is entitled to habeas relief on several other grounds as well, namely: (1) the court violated *Miller* and *Ring v. Arizona* (2002) 536 U.S. 584 because trial court imposed LWOP based on a judicial finding Pulido was the shooter; (2) under *Miller* and *Graham,* the Eighth Amendment imposes a categorical bar to an LWOP sentence on a felony-murder juvenile who did not personally kill or intend to kill; and (3) the LWOP sentence imposed here constitutes cruel and unusual punishment under the California Constitution, article I, section 17. The relief we now afford moots the first contention and renders the second unripe for review at this time, and we rejected the third contention on direct appeal.

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.