STATE of Alaska, Petitioner,

v.

Troy SMART, Respondent.

State of Alaska, Petitioner,

v.

Henry Douglas, Respondent.

Nos. S–12493, S–12543.

Supreme Court of Alaska.

Feb. 27, 2009.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Petitioner.

Linda K. Wilson, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Respondents.

Joshua P. Fink, Public Advocate, Anchorage, for Amicus Curiae Office of Public Advocacy.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The question presented in these two cases is whether the right to a jury trial announced in *Blakely v. Washington*[1] should be retroactively applied to two state defendants, Troy Smart and Henry Douglas, whose sentences were final before June 24, 2004, when *Blakely* was decided. *Blakely* requires that any fact—except a fact admitted by the defendant or the fact of a prior conviction—necessary to increase a sentence above the statutory presumptive maximum be proved to a jury beyond a reasonable doubt. We decline to give *Blakely* full retroactivity. We conclude that the purpose of *Blakely* does not raise serious questions about the accuracy of past sentences and must be weighed against the state's reliance on the old rule for over twenty years and the administrative burden of

---

1. *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

implementing the new rule retroactively. We therefore reverse the rulings of the court of appeals in these two cases and remand.

## II. FACTS AND PROCEEDINGS

A jury convicted Troy Smart of second-degree assault. Because Smart was a second felony offender he faced a presumptive sentence of four years with a maximum sentence of ten years.[2] The sentencing judge found an aggravating factor and in May 2002 sentenced Smart to serve ten years, with six of those years suspended.[3] The court of appeals affirmed Smart's sentence in January 2003.[4] Smart did not seek further review of his sentence at that time.

Henry Douglas pleaded no contest to first-degree robbery. As a second felony offender Douglas faced a presumptive sentence of ten years and a maximum sentence of twenty years.[5] In August 1999 the sentencing judge found multiple aggravating factors and sentenced Douglas to serve eighteen years, with eight of those years suspended.[6] Douglas appealed but his appeal was dismissed in April 2000.[7]

In June 2000 the United States Supreme Court held in *Apprendi v. New Jersey* that defendants have a constitutional right to have a jury decide any disputed fact—other than the fact of a prior conviction—that increases a sentence beyond the statutory maximum, and to have each such fact proved beyond a reasonable doubt.[8] In June 2004 the Supreme Court in *Blakely v. Washington* for the first time applied *Apprendi* to a sentence imposed under a presumptive sentencing scheme.[9] It held in *Blakely* that a defendant's sentence was invalid because the aggravating facts, which supported an increase above the sentence that was authorized by the jury's verdict alone, were neither admitted by the defendant nor found by a jury.[10]

After *Blakely* was issued, Douglas filed an Alaska Criminal Rule 35(a) motion claiming that his sentence was illegal under *Blakely*. Superior Court Judge Ben J. Esch denied Douglas's motion, holding that "*Blakely* is not retroactive and does not apply to this case because it is not on . . . direct appeal."

Likewise, Smart filed an Alaska Criminal Rule 35(a) motion in 2004, claiming that his sentence was illegal under *Blakely*. Superior Court Judge Larry R. Weeks concluded that Smart's request could only be presented as an Alaska Criminal Rule 35.1 petition for post-conviction relief. Treating the motion as a Rule 35.1 petition, Judge Weeks denied Smart's motion, holding that *Blakely* did not apply retroactively to cases that have been decided on appeal.

Smart and Douglas both appealed. The court of appeals decided Smart's appeal first. It first held that the state retroactivity test

---

2. *Smart v. State*, Mem. Op. & J. No. 4653 at 1, 2003 WL 122456 (Alaska App., January 15, 2003); *see* former AS 12.55.125(d)(1).

3. *Id.* at 1. The court found the aggravating factor set out in AS 12.55.155(c)(13) ("the defendant knowingly directed the conduct constituting the offense at an active officer of the court or at an active or former judicial officer, prosecuting attorney, law enforcement officer, correctional employee, fire fighter, emergency medical technician, paramedic, ambulance attendant, or other emergency responder during or because of the exercise of official duties").

4. *Id.*

5. Former AS 12.55.125(c)(3).

6. The judge found the following aggravating factors set out in AS 12.55.155(c): (3) ("leader of a group of three or more persons who participated in the offense"), (6) ("conduct created a risk of

imminent physical injury to three or more persons, other than accomplices"), (14) ("member of organized group of five or more persons, and the offense was committed to further the criminal objectives of the group"), and (22) ("knowingly directed the conduct . . . at a victim because of that person's race, sex, color, creed, physical or mental disability, ancestry, or national origin").

7. Court of Appeals Case No. A–7528; *see also Douglas v. State*, Mem. Op. & J. No. 5155, 2006 WL 3759365 (Alaska App., December 20, 2006).

8. *Apprendi v. New Jersey*, 530 U.S. 466, 489–90, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

9. *Blakely v. Washington*, 542 U.S. 296, 305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

10. *Id.*

announced in *Judd v. State* [11]—not the federal retroactivity test announced in *Teague v. Lane* [12]—applied.[13] It then held that *Blakely* should be fully retroactive in Alaska.[14] It therefore vacated Smart's sentence and remanded for further proceedings on the disputed aggravating factor.[15] In resolving Douglas's appeal, the court of appeals relied on its decision in *Smart* and remanded for further proceedings on Douglas's contested aggravators.[16]

The state filed petitions for hearing challenging both decisions. We granted the petitions, ordered full briefing, and consolidated the cases for decision.

## III. DISCUSSION

### A. Standard of Review

 These cases require interpretation of the United States and Alaska Constitutions and federal and state case law concerning the retroactivity of appellate decisions. We use our independent judgment in reviewing rulings turning on federal and state constitutional law.[17]

### B. *Apprendi* and *Blakely*

Because this case turns on whether *Blakely* applies retroactively to cases on collateral review,[18] we begin with an overview of *Blakely* and its predecessor, *Apprendi*.

*Apprendi*. Apprendi fired bullets into the home of an African–American family.[19] He entered a plea agreement and pleaded guilty to three of the twenty-three counts charged.[20] Under Apprendi's plea agreement, the sentences for two counts would run consecutively and the sentence for the third count would run concurrently with the other two.[21] Apprendi faced a maximum aggregate sentence of twenty years on the two counts (ten-year maximum for each count) if the judge found no basis for a hate-crime enhancement.[22] But if the hate-crime enhancement applied to one count, a New Jersey statute authorized a twenty-year maximum sentence on that count alone.[23] Applying a preponderance of the evidence standard, the sentencing judge found that the hate-crime enhancement applied to one count.[24] He sentenced Apprendi to a twelve-year term on that count and to shorter concurrent sentences on the other two counts.[25]

---

11. *Judd v. State*, 482 P.2d 273 (Alaska 1971).

12. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Teague* was a plurality opinion that has subsequently been adopted by a majority of the Court. *See, e.g., Danforth v. Minnesota*, 552 U.S. ——, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008); *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

13. *Smart v. State*, 146 P.3d 15, 29 (Alaska App. 2006).

14. *Id.* at 38.

15. *Id.* at 38–39.

16. *Douglas v. State*, Mem. Op. & J. No. 5155, 2006 WL 3759365 (Alaska App., December 20, 2006).

17. *Grinols v. State*, 74 P.3d 889, 891 (Alaska 2003) ("We interpret the Alaska Constitution using our independent judgment."); *Todd v. State*, 917 P.2d 674, 677 (Alaska 1996) (applying independent judgment standard to issue involving questions of federal and state constitutional law).

18. Applying a new constitutional principle to criminal cases on collateral review gives the principle "full retroactivity." *See, e.g., Yerrington v. Anchorage*, 675 P.2d 649, 651 (Alaska App.1983) (defining "full retroactivity" as "application [of new rules] to final decisions challenged in post-conviction relief proceedings as well as pending cases"). Applying a new principle to cases on direct review, to cases at the trial level, to any case not yet charged, and to crimes not yet committed gives the principle "limited retroactivity." *Id.* (stating that new rules that did not meet the requirements for full retroactivity "would be given limited retroactivity and applied to cases then pending on appeal"). We use this terminology in this opinion.

19. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

20. *Id.* at 469–70, 120 S.Ct. 2348.

21. *Id.* at 470, 120 S.Ct. 2348.

22. *Id.*

23. *Id.*

24. *Id.* at 471, 120 S.Ct. 2348.

25. *Id.*

The question before the Supreme Court was whether a jury had to find on the basis of proof beyond a reasonable doubt that there had been a hate crime.[26] This question would determine whether the twelve-year sentence on the single count was "permissible" given the ten-year maximum for that offense.[27] The Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[28] The Court reversed the judgment of the New Jersey Supreme Court, which had upheld Apprendi's sentence.[29]

***Blakely.*** In *Blakely* the Supreme Court applied *Apprendi* to a presumptive sentencing system for the first time. Blakely pleaded guilty in Washington State to kidnaping his estranged wife.[30] Per state statute, the "standard range" for Blakely's conviction was forty-nine to fifty-three months.[31] The statute allowed a sentence above the standard range if the judge found "substantial and compelling reasons justifying an exceptional sentence."[32] The judge imposed an exceptional sentence of ninety months (thirty-seven months above the maximum of the standard range) because he found that Blakely acted with "deliberate cruelty"—a statutory aggravating factor.[33] Reviewing Blakely's sentence, the Supreme Court concluded that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."[34] "In other words," the Court held, "the relevant 'statutory maximum' is not the maximum sentence a judge may im-

pose after finding additional facts, but the maximum he may impose *without* any additional findings."[35] The Court held that because Blakely's sentence exceeded the presumptive sentence, absent a jury finding of the enhancing factor under the reasonable doubt standard, the sentence violated the Sixth Amendment right to a jury trial.[36] The Court made it clear that prior convictions and facts admitted by the defendant do not fall within the requirements of *Apprendi* and *Blakely*.[37]

The question facing state courts after *Apprendi* and *Blakely* was whether the Supreme Court's interpretation of the Federal Constitution in those cases should be given full retroactivity by a state reviewing its own criminal convictions. One part of that question was whether the issue of retroactivity should be decided by applying an individual state's retroactivity standard or the federal retroactivity standard set out in *Teague v. Lane*.[38] That issue was squarely presented to the Court in *Danforth v. Minnesota*.[39]

The Court in *Danforth v. Minnesota* summarized the *Teague* rule as follows:

> New constitutional rules announced by this Court that place certain kinds of primary individual conduct beyond the power of the States to proscribe, as well as "watershed" rules of criminal procedure, must be applied in all future trials, all cases pending on direct review, and all federal habeas corpus proceedings. All other new rules of criminal procedure must be applied in future trials and in cases pending on direct review, but may not provide the basis for a

26. *Id.* at 468–69, 120 S.Ct. 2348.

27. *Id.* at 474, 120 S.Ct. 2348.

28. *Id.* at 490, 120 S.Ct. 2348.

29. *Id.* at 472, 497, 120 S.Ct. 2348.

30. *Blakely v. Washington,* 542 U.S. 296, 298, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

31. *Id.* at 299, 124 S.Ct. 2531.

32. *Id.*

33. *Id.* at 300, 124 S.Ct. 2531.

34. *Id.* at 303, 124 S.Ct. 2531 (emphasis in original).

35. *Id.* at 303–04, 124 S.Ct. 2531 (emphasis in original).

36. *Id.* at 305, 124 S.Ct. 2531.

37. *Id.* at 301, 303, 124 S.Ct. 2531.

38. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion).

39. *Danforth v. Minnesota,* 552 U.S. ——, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).

federal collateral attack on a state-court conviction.[40]

Thus, under *Teague,* to use the terms we identified in footnote eighteen, limited retroactivity must be given as a matter of course to new constitutional rules announced by the United States Supreme Court. In other words, when a new ruling is announced by the United States Supreme Court it must be applied to any case still pending on direct review in the state system. Because neither of the cases before us was still pending on direct review in the state system when *Blakely* was decided, the question in these cases is whether *full* retroactivity should be afforded to the *Blakely* ruling. Under the *Teague* standard for full retroactivity, full retroactivity would be required if *Blakely* was a ruling that placed a certain kind of primary individual conduct beyond the power of the states to proscribe or if it was a "watershed" rule of criminal procedure. Until *Danforth* was decided, it was an open question whether a state court could grant full retroactive effect to a United States Supreme Court ruling in cases in which the *Teague* standard for full retroactivity was not met. That issue was decided by the Court in *Danforth.*

## C. *Danforth* and the Applicable Test for Full Retroactivity

The Supreme Court introduced the retroactivity issue in *Danforth* as follows: "The question in this case is whether *Teague* constrains the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion. We have never suggested that it does, and now

hold that it does not." [41] The Court stated that "[s]tates are independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees." [42] A state is thereby "free to give its citizens the benefit of [the Court's] rule in any fashion that does not offend federal law." [43] *Danforth* clarified that it is acceptable for states to give broader protection to defendants by applying state retroactivity law in state post-conviction proceedings.[44] The Court held in *Danforth* that *Teague* does not impose a binding obligation on state courts and that "a state court, when reviewing its own state criminal convictions, [may] provide a remedy for a violation that is deemed 'nonretroactive' under *Teague.*" [45]

*Danforth* therefore allows us to apply either the *Teague* test for full retroactivity or a state constitutional test so long as the state test is at least as comprehensive as the federal test. The Alaska Court of Appeals determined that the three-factor test used in *Judd v. State* [46] should be employed. In *Judd* we identified three criteria which guide resolution of the question of the retroactivity of a new ruling: "(a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards." [47]

We borrowed these standards from those the Supreme Court discussed in *Linkletter v. Walker.*[48] They were designed to answer the question whether the Court's decision in

40. *Id.* at 1032.

41. *Id.* at 1031. This holding makes it unnecessary to consider whether *Teague* is binding on state courts. Only the state's reply brief was filed after *Danforth.* The opening briefs of the state, Douglas, and Smart anticipated that *Danforth,* when published, would control which standard applies to these cases. The state argues that *Teague* is binding in state court collateral proceedings deciding the retroactivity of a new rule based on the Federal Constitution. The respondents argue that *Teague* is only binding on federal courts in a federal habeas corpus collateral proceeding, and is not binding on state courts. *Danforth's* ruling renders this dispute moot.

42. *Id.* at 1041.

43. *Id.*

44. *Id.* at 1046.

45. *Id.* at 1042.

46. *Judd v. State,* 482 P.2d 273 (Alaska 1971).

47. *Id.* at 278.

48. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

*Mapp v. Ohio* [49]—requiring that state courts exclude unconstitutionally seized evidence—would apply to state convictions that were on collateral review.[50] The *Linkletter* Court in applying the three-factor test decided that *Mapp* should not be applied to cases on collateral review.[51]

Subsequently, in *Williams v. United States* the Supreme Court applied the *Linkletter* standards to a case on direct review.[52] Justice Harlan dissented from the *Williams* decision, noting that he had come to regret the *Linkletter* decision in which he had joined.[53] In his view new constitutional rulings should as a matter of course be applied to state cases which are still pending on direct review when a new ruling is announced.[54] Justice Harlan decried the practice of prospective overruling as both inequitable to litigants who should benefit from a new ruling and inconsistent with the role of a reviewing court: "Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitutes an indefensible departure from this model of judicial review."[55] Justice Harlan also concluded that the *Linkletter* standards were inappropriate for determining whether a new ruling should be applied to cases on collateral review and suggested instead that retroactive application in such cases should be limited to new substantive due process rulings and "for claims of nonobservance of ... procedures that ... 'are implicit in the concept of ordered liberty.' "[56] Justice Marshall joined in Justice Harlan's dissent in *Williams* with

respect to cases on direct review.[57] As to cases on collateral review, Justice Marshall was of the opinion that the *Linkletter* standards were appropriate. He wrote that

[t]he method commends itself, once the point of finality after direct review is passed, as a careful and appropriate way of adjudicating the "procedural" rights of litigants in view of the purposes of a new decisional rule and the concerns of effective law enforcement. In particular, if the purposes of a new rule implicate decisively the basic truth-determining function of the criminal trial, then I believe the rule should be given full retroactive application, for the required constitutional procedure itself would then stand as a concrete embodiment of "the concept of ordered liberty." [58]

Use of the *Linkletter* standards for cases on direct review did not long survive in the United States Supreme Court. In *United States v. Johnson,* the Court adopted Justice Harlan's view, save for cases where the new ruling was said to be "a clear break with the past."[59] Thus, a "clear break" rule was not to be applied retroactively to cases on direct review. In *Griffith v. Kentucky* the Court decided that the "clear break" exception was not tenable and held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."[60] *Griffith,* however, left undisturbed the application of the *Linkletter* standards to cases pending on collateral review. Two years after *Griffith, Teague* decided that

**49.** *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**50.** *Linkletter,* 381 U.S. at 622, 85 S.Ct. 1731. The Court noted that *Mapp* had been applied to cases still pending on direct review at the time it was decided. *Id.*

**51.** *Id.* at 640, 85 S.Ct. 1731.

**52.** *Williams v. United States,* 401 U.S. 646, 651–52, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

**53.** *Williams v. United States,* 401 U.S. 667, 676, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971).

**54.** *Id.* at 679, 91 S.Ct. 1171.

**55.** *Id.*

**56.** *Id.* at 693, 91 S.Ct. 1171 (quoting *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).

**57.** *Id.* at 665, 58 S.Ct. 149.

**58.** *Id.* at 666, 58 S.Ct. 149.

**59.** *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

**60.** *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

question and overruled the use of the *Linkletter* standards for cases on collateral review in favor of the approach advocated by Justice Harlan in his dissent in *Williams*.[61]

In light of the force of Justice Harlan's rationale, it may be difficult to defend the use of the *Linkletter/Judd* standards in cases involving direct review on the state level. No party argues that any standard other than those discussed in *Teague* and *Judd* should be applied here on collateral review. Absent meaningful argument on the issue, we decline to consider whether to apply some other standard in these cases.

■ Using *Judd* as the test for full retroactivity, we must first determine whether the disputed cases announced a new rule.[62] If so, we then examine the purpose of the new rule and, depending on that purpose, balance multiple factors to determine full retroactivity.[63] By contrast, *Teague* only treats two narrow categories of rules as ret-

roactive: (1) those that render types of conduct "beyond the power of the criminal lawmaking authority to proscribe" and (2) "watershed" rules that "implicate the fundamental fairness of the trial."[64] The Supreme Court has applied exceptionally few rules retroactively under *Teague*.[65]

To confirm that *Judd* is no less protective than the federal standard, and that it can therefore be applied to determine full retroactivity of *Blakely*, we consider whether *Blakely* would be fully retroactive under *Teague*. To do so, we look to how the federal courts have applied *Teague* to *Blakely*. So long as *Judd* at least meets the federal standard, it does not offend federal law.[66] That is, if *Blakely* would not be fully retroactive under *Teague*, we can proceed to determining whether *Blakely* is fully retroactive under state law.

■ The federal courts of appeals that have carefully considered the issue have con-

**61.** *Teague v. Lane*, 489 U.S. 288, 292, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion).

**62.** We use "rule" in this context to mean a judicially adopted principle of law, not a court procedural rule. Black's Law Dictionary generally defines "rule" as "an established and authoritative standard or principle," and the "rule of law" as "[t]he doctrine that general constitutional principles are the result of judicial decisions determining the rights of private individuals in the courts." BLACK'S LAW DICTIONARY 1357, 1359 (8th ed.2004). Justice Stevens explained in *Danforth* that a "new rule"—the result of a case not dictated by precedent—is not "a rule of [the Court's] devising or the product of [its] own views about sound policy." *Danforth*, 128 S.Ct. at 1035. "[T]he source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law," and, according to Justice Stevens, "the underlying right necessarily preexists [the Court's] articulation of the new rule." *Id.*

**63.** As noted, under *Judd* we look at the following three criteria to determine questions of retroactivity: "(a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards." *Judd v. State*, 482 P.2d 273, 277–78 (Alaska 1971); *see also State v. Semancik*, 99 P.3d 538, 543 (Alaska 2004) (reaffirming *Judd*). As we discuss later, "[w]here the purpose of the rule is primarily related to the integrity of the verdict, the application thereof has generally extended to all cases." *Rutherford v. State*, 486 P.2d

946, 952 (Alaska 1971). New constitutional doctrines that "only marginally or secondarily concern the integrity of the fact-finding process" require a careful balancing analysis of all three factors. *Id.* at 953.

**64.** *Teague*, 489 U.S. at 311–12, 109 S.Ct. 1060.

**65.** *See* Brian Hoffstadt, *How Congress Might Redesign a Leaner, Cleaner Writ of Habeas Corpus*, 49 DUKE L.J. 947, 976–77 (2000) (noting that since *Teague* only one new rule has fit under the first exception and none has fit under the second exception). The Supreme Court has stated that "the second *Teague* exception is reserved only for truly 'watershed' rules . . . [and] it is unlikely that any of these watershed rules 'ha[s] yet to emerge [since *Teague* ].'" *Tyler v. Cain*, 533 U.S. 656, 667 n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (internal citations omitted). The Court later stated that *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), qualifies under this exception. *Whorton v. Bockting*, 549 U.S. 406, 419, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

**66.** In *Danforth* the Court agreed with Minnesota's argument that it "may grant its citizens broader protection than the Federal Constitution requires by enacting appropriate legislation or by judicial interpretation of its own Constitution." *Danforth*, 128 S.Ct. at 1046. The Court stated that "[s]tates that give broader retroactive effect to this Court's new rules of criminal procedure do not do so by misconstruing the federal *Teague* standard. Rather, they have developed *state* law to govern retroactivity in state postconviction proceedings." *Id.* (emphasis in original).

cluded that *Blakely* is not fully retroactive under *Teague*.[67] These courts have held that *Blakely* announced a new procedural rule, that this rule does not place certain kinds of conduct beyond the power of the criminal law-making authority to prohibit, and that *Blakely* did not announce a watershed rule of criminal procedure.[68] State courts applying *Teague* have reached the same conclusion.[69] Because Smart and Douglas could not succeed on a *Blakely* challenge under the federal retroactivity standard, we conclude that our state standard is no less protective than the federal standard.[70]

### D. Is *Blakely* a New Rule or Was It Compelled by the Holding in *Apprendi?*

Under Alaska law, as a preliminary matter we must decide whether *Blakely* announced a new rule or was instead a compelled application of then-existing precedent.[71] We only apply the *Judd* retroactivity balancing analysis if there is a new rule. Smart argues that *Blakely* did not announce a new rule because it was compelled by the Supreme Court's earlier holding in *Apprendi*. This issue is critical to Smart because his case had not become final when *Apprendi* was decided on June 26, 2000.[72]

In *Teague* Justice O'Connor, who wrote the lead opinion, stated that "in general . . . a case announces a new rule when it breaks new ground" or, in other words, "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." [73] Justice O'Connor noted that it is "often difficult to determine when a case announces a new rule," and she declined to "define the spectrum of what may or may not constitute a new rule for retroactivity purposes." [74] The Supreme Court recently revisited the question of how to determine whether a case creates a new rule. In *Beard v. Banks*, the Court instructed: "We must . . . ask 'whether the rule later announced . . . was *dictated* by then-existing precedent—whether, that is, the unlawfulness of [the] conviction was apparent to all reasonable jurists.' " [75]

■ The Alaska Court of Appeals did not address this issue before analyzing retroac-

---

**67.** *United States v. Price*, 400 F.3d 844, 849 (10th Cir.2005) (holding that *Blakely* is not retroactive under *Teague* ); *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir.2005) (same). Other federal courts of appeals have stated that *Blakely* is not fully retroactive but have limited their analysis to noting that the Supreme Court has not yet declared *Blakely* retroactive. *See, e.g., Simpson v. United States*, 376 F.3d 679, 681 (7th Cir.2004) (dismissing motion for authorization, and holding that "[t]he Supreme Court has not made the *Blakely* rule applicable to cases on collateral review"); *In re Dean*, 375 F.3d 1287, 1290 (11th Cir.2004) (denying application for leave to file second or successive motion to vacate sentence, and stating that Supreme Court had not expressly declared *Blakely* retroactive).

**68.** *Price*, 400 F.3d at 848–49; *Schardt*, 414 F.3d at 1035–37.

**69.** *See Carmichael v. State*, 927 A.2d 1172, 1179 (Me.2007) (applying *Teague* test and holding that *Blakely* is not retroactive); *State v. Houston*, 702 N.W.2d 268, 273 (Minn.2005) (same); *State v. Evans*, 154 Wash.2d 438, 114 P.3d 627, 633 (2005) (same).

**70.** Based on the Supreme Court's reasoning in *Schriro v. Summerlin*, 542 U.S. 348, 356, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the federal courts of appeals' treatment of *Blakely* as nonretroactive, and the fact that no case has been found to fall within one of the *Teague* exceptions, we think it is unlikely the Supreme Court will hold that *Blakely* is fully retroactive. The Court in *Summerlin* considered a claim that a new rule requiring that aggravating factors resulting in the death penalty be found by a jury was a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 355, 124 S.Ct. 2519 (internal citations omitted). But the Court held that allowing judicial fact-finding instead of jury fact-finding did not create an "impermissibly large risk of injustice." *Id.* at 356, 124 S.Ct. 2519.

**71.** *State v. Glass*, 596 P.2d 10, 12 (Alaska 1979); *see also Wright v. West*, 505 U.S. 277, 304, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion).

**72.** *Apprendi v. New Jersey*, 530 U.S. 466, 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Smart v. State*, Mem. Op. & J. No. 4653 (Alaska App., January 15, 2003).

**73.** *Teague*, 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original).

**74.** *Id.*

**75.** *Beard v. Banks*, 542 U.S. 406, 413, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (emphasis in origi-

tivity in its opinion in *Smart*, but all three members of the court agreed that *Blakely* announced a new rule.[76] Although *Blakely* relied on *Apprendi*, it fundamentally changed courts' understanding of "maximum sentence." [77] *Blakely* defined the "maximum sentence" not as the maximum allowed by a presumptive sentencing scheme, but as the maximum allowed by the jury's verdict.[78] Before *Blakely* was decided, courts consistently held that *Apprendi* did not apply to sentences within the statutory maximum.[79] The rule in *Blakely* was clearly not apparent to all courts and was not dictated by precedent.[80]

We consequently conclude that *Blakely* announced a new rule of law and that it therefore does not automatically apply on collateral review. We must apply Alaska's full retroactivity test to determine whether this new rule applies retroactively to Smart and Douglas.

### E. Is *Blakely* Fully Retroactive Under *Judd?*

 The full retroactivity standard adopted in *Judd v. State* requires us to con-

sider three factors when deciding whether to apply a new constitutional rule retroactively: (1) the purpose to be served by the new standards; (2) the extent of the reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards.[81]

### 1. The purpose of the rule announced in *Blakely*

The purpose of the *Blakely* rule is to guarantee that a jury finds beyond a reasonable doubt the facts that determine the maximum sentence. The Supreme Court explained that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." [82] A violation of *Blakely* does not call into question the guilt of the defendant, but it "undermines the factual foundation of the sentencing court's authority to impose an increased

nal) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527–28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)).

**76.** See *Smart v. State*, 146 P.3d 15, 40–41 (Alaska App.2006) (Stewart, J., concurring); *id.* at 41–42 (Coats, C.J., dissenting); *id.* at 48–49 (Mannheimer, J., concurring).

**77.** See *Blakely v. Washington*, 542 U.S. 296, 301–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**78.** *Id.* at 303, 124 S.Ct. 2531.

**79.** See *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir.2004) (stating that "before *Blakely* was decided, every federal court of appeals had held that *Apprendi* did not apply to guideline calculations made within the statutory maximum" (citing *United States v. Hughes*, 369 F.3d 941, 947 (6th Cir.2004))); *United States v. Francis*, 367 F.3d 805, 820 (8th Cir.2004); *United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004); *United States v. Alvarez*, 358 F.3d 1194, 1211–12 (9th Cir.2004); *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir.2003); *United States v. Patterson*, 348 F.3d 218, 228–29 (7th Cir.2003); *United States v. Randle*, 304 F.3d 373, 378 (5th Cir.2002); *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir.2001); *United States v. Webb*, 255 F.3d 890, 898 (D.C.Cir.2001); *United States v. Angle*, 254 F.3d 514, 518 (4th Cir.2001); *United States v. Caba*, 241 F.3d 98, 100 (1st

Cir.2001); *United States v. Garcia*, 240 F.3d 180, 183–84 (2d Cir.2001).

**80.** The state likewise argues that *"Apprendi's* application to presumptive sentencing was subject to debate among reasonable jurists." This is consistent with the views of federal courts of appeals considering similar arguments. See *Schardt v. Payne*, 414 F.3d 1025, 1035 (9th Cir. 2005) (holding that *Blakely* is new rule and pointing out that "[e]very circuit court of appeals that addressed the question presented in *Blakely* reached the opposite conclusion from the rule subsequently announced by the Supreme Court"). But see *Carmona v. United States*, 390 F.3d 200, 203 & n. 1 (2d Cir.2004) (declining to allow *Blakely* challenge but suggesting Supreme Court might decide it is not new rule). We agree with the state's contention here, and therefore reject Smart's argument that after *Apprendi* but before *Blakely* it was unreasonable for judges to continue finding proposed aggravating factors by clear and convincing evidence.

**81.** *Judd v. State*, 482 P.2d 273, 277–78 (Alaska 1971) (adopting retroactivity test announced in *Linkletter v. Walker*, 381 U.S. 618, 636–38, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

**82.** *Blakely*, 542 U.S. at 304, 124 S.Ct. 2531 (internal citation omitted).

punishment."[83]

Applying the *Judd* standard, the court of appeals concluded that *Blakely* should be applied fully retroactively.[84] The court parsed the two elements of *Apprendi:* the right to a jury, and the right to demand that the government prove the disputed issue of fact beyond a reasonable doubt.[85] Focusing on the requirement of proof beyond a reasonable doubt,[86] the court concluded that the " 'reasonable doubt' component of *Apprendi* and *Blakely* is the type of rule ... whose primary purpose is 'related to the integrity of the verdict', and whose function is to cure a flaw that 'raises serious questions about the accuracy of guilty verdicts.' "[87]

The court relied on our opinion in *Rutherford v. State,* which quoted from Justice White's plurality opinion in *Williams v. United States*[88]: "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial which substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule [is to be] given complete retroactive effect."[89] The court of appeals also relied on our statement in *Rutherford* that the first *Judd* factor (purpose) will supersede other considerations whenever "the purpose of the new rule is primarily related to the integrity of the verdict."[90] Because "[t]he *Blakely* requirement of proof beyond a reasonable doubt is ... designed to prevent unconstitutional punishment," the court of appeals concluded that full retroactivity should be granted "even if the other two parts of the Alaska retroactivity test ... would militate against retroactive application."[91]

The *Rutherford* language relied on by the court of appeals in holding that the first factor was determinative sets a high standard. That standard ensures that only the most exceptional new rules are not subject to the three-part balancing test. The new rule must "raise[ ] serious questions about the accuracy" of previous verdicts and "overcome an aspect of the criminal trial which substantially impair[ed] its truth-finding function."[92] We stated in *Rutherford* that where the purpose of the new rule is "primarily related to the integrity of the verdict," the new rule is generally applied to all cases.[93] But we also recognized that "where the purpose of a new constitutional standard is not to minimize arbitrary or unreliable fact findings ... retroactive application has generally been de-

---

**83.** *Smart v. State,* 146 P.3d 15, 33 (Alaska App. 2006).

**84.** *Id.* at 29, 38.

**85.** *Id.* at 30.

**86.** The court of appeals focused on the standard of proof even though the Supreme Court's focus in *Blakely* was on the centrality of the right to a jury's decision. In *Blakely* the Supreme Court stated that the rule it expressed in *Apprendi,*
reflects two longstanding tenets of common-law criminal jurisprudence: that the "truth of every accusation" against a defendant "should afterward be confirmed by the unanimous suffrage of twelve of his equals and neighbours," 4 W. Blackstone, Commentaries on the Laws of England 343 (1769), and that "an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law, and it is not accusation in reason," 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872).
*Blakely,* 542 U.S. at 301–02[, 124 S.Ct. 2531]. Furthermore, the Court stated in *Blakely* that its "commitment to *Apprendi* in this context reflects not just respect for longstanding precedent, but
the need to give intelligible content to the right of jury trial, [which is] a fundamental reservation of power in our constitutional structure." *Id.* at 305–06, 124 S.Ct. 2531.

**87.** *Smart,* 146 P.3d at 32 (quoting *Rutherford v. State,* 486 P.2d 946, 952–53 (1971)).

**88.** *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

**89.** *Smart,* 146 P.3d at 32. The question in *Rutherford* was whether to apply *Glasgow v. State,* 469 P.2d 682 (Alaska 1970), to a case that was still on direct review when *Glasgow* was decided. *Rutherford,* 486 P.2d at 952. *Glasgow* held that a defendant's failure to demand a speedy trial did not waive his speedy trial right. *Glasgow,* 469 P.2d at 688–89.

**90.** *Smart,* 146 P.3d at 32 (quoting *Rutherford,* 486 P.2d at 952).

**91.** *Id.* at 33.

**92.** *Rutherford,* 486 P.2d at 952–53.

**93.** *Id.* at 952.

nied." [94] We acknowledged that "[d]ifficult analytical problems arise [that] necessitate reference to the other two criteria, because with many new constitutional doctrines, (t)he extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities." [95] In *Rutherford* we gave limited retroactive effect to the speedy trial right, but we did so only after weighing all three *Judd* factors.[96]

Here we must decide whether to balance the three *Judd* factors, as we did in *Rutherford*, or whether *Blakely's* purpose is so closely related to the accuracy of guilty verdicts that it supersedes the other factors. The proper comparisons here are (1) between judge and jury as fact-finder, and (2) between the clear and convincing proof standard and the proof beyond a reasonable doubt standard. The *Rutherford* standard asks whether permitting a judge to find facts under a lower standard of proof "substantially impairs [the criminal trial's] truth-finding function" and "raises serious questions about the accuracy of guilty verdicts in past trials." [97] If the answer is yes, *Blakely* must be given retroactive effect regardless of the outcome of the other two factors. If not, all three factors must be weighed. This question turns on that "question of probabilities" [98]: whether the likelihood of accurate verdicts is seriously diminished if the re-

quirements of *Blakely*—both the right to a jury and the standard of proof—are not met.

■ **Jury Trial.** The Supreme Court, in *Schriro v. Summerlin*, has already resolved the first comparison—judge to jury—by holding that judicial fact-finding, instead of jury fact-finding, does not "so *seriously* diminish[ ] accuracy as to produce an impermissibly large risk of injustice." [99] We think the Court's analysis is persuasive on this point. In *Summerlin*, decided the same day as *Blakely* and written by the author of the Court's opinion in *Blakely*, the Court determined that a new rule requiring that aggravating factors be proved to a jury rather than a judge was procedural, not substantive, and concluded that the rule does not apply retroactively to cases already final on direct review.[100] There an Arizona statute authorized the death penalty if a judge found certain aggravating factors.[101] The Court noted that this judicial fact-finding violated *Apprendi*.[102] But the Court concluded that the evidence of whether judges or juries were better fact-finders was too equivocal to conclude that judges were less accurate fact-finders or to hold that "judicial factfinding so *seriously* diminishes accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." [103] The Court held that the rule that a jury find aggravating factors does not apply retroactively to cases already final on direct review.[104] We

94. *Id.* at 953.

95. *Id.* (internal citation and quotations omitted).

96. *Id.* at 954.

97. *Id.* at 952–53.

98. *Id.* at 953.

99. *Schriro v. Summerlin,* 542 U.S. 348, 356, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (emphasis in original) (internal quotations omitted). While the Court answered this question as part of its *Teague* analysis, it applies as well to the same question presented in a *Judd* analysis.

100. *Id.* at 355–58, 124 S.Ct. 2519. *Summerlin* concerned the new rule announced by the Court in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *Ring* applied *Apprendi* to a death sentence imposed under the Arizona sentencing scheme and concluded that the existence of an aggravating factor necessary to au-

thorize the death penalty must be proved to a jury rather than a judge. *Summerlin,* 542 U.S. at 351, 124 S.Ct. 2519 (discussing *Ring* ).

101. *Id.* at 350, 124 S.Ct. 2519.

102. *Id.* at 351, 124 S.Ct. 2519. In *Summerlin* the Court applied *Teague* to determine that *Ring's* holding, which applied *Apprendi*, was properly classified as procedural and was not a "watershed rule" implicating the fundamental fairness and accuracy of criminal procedure. *Id.* at 353–58, 124 S.Ct. 2519. *Ring* held that a jury must find facts supporting aggravating factors. *Ring,* 536 U.S. at 609, 122 S.Ct. 2428.

103. *Summerlin,* 542 U.S. at 355–56, 124 S.Ct. 2519 (internal quotations omitted) (emphasis in original).

104. *Id.* at 358, 124 S.Ct. 2519. Justice O'Connor, dissenting in *Blakely*, suggested that the Court's conclusion in *Summerlin* held that *Apprendi* does not apply retroactively on habeas

think it is highly likely that the Court would reach the same conclusion if it were deciding whether the jury fact-finding rule of *Blakely* is fully retroactive. We therefore conclude that judicial fact-finding instead of jury fact-finding does not substantially impair the truth-finding function of the criminal trial and does not raise serious questions about the accuracy of fact-finding during sentencing such that this factor must supersede the other considerations of our *Judd* test.

■ **Standard of Proof.** The more difficult question is whether finding an aggravator under the clear and convincing standard instead of *Blakely's* reasonable doubt standard seriously diminishes the likelihood of accurate fact-finding for sentences. We conclude that failure to fully retroactively impose *Blakely's* requirement that aggravators be found under the reasonable doubt standard does not impair truth-finding so substantially that the factors in *Judd* need not be weighed.

To begin, we review some of the constitutional principles that do impact truth-finding so substantially that the importance of their purposes precludes balancing other factors. *Rutherford* listed cases in which this standard was applied and the purpose of the new rule was held to be outcome-determinative. For example, the Supreme Court held that the right to counsel applied retroactively because "the 'denial of the right must almost invariably deny a fair trial.' " [105] The Court reasoned that the assistance of counsel was necessary for "marshaling the facts, intro-

ducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case" [106] and that "only the aid of counsel could ... enable[ ] the accused to know all the defenses available ... and to plead intelligently." [107] Likewise the Court held that the right to confront witnesses significantly affected the "integrity of the fact-finding process" and therefore applied retroactively because "one of the important objects of the right of confrontation [is] to guarantee that the fact finder ha[s] an adequate opportunity to assess the credibility of witnesses." [108]

■ Both the right to counsel and the right to confront witnesses are central to a fair and accurate trial.[109] Without counsel, an indigent defendant would be severely disadvantaged at all stages of the process. Without the right to confront witnesses, the fact-finder may not be able to fairly assess the accuracy of the facts on which the case is decided. The rule announced in *Blakely* does not have as substantial an impact on the truth-finding function of a criminal trial.

The court of appeals relied heavily on the Supreme Court's discussion of the reasonable doubt standard in *In re Winship*.[110] The Court there held that the Due Process Clause of the Fourteenth Amendment requires that every fact necessary to constitute a crime be proved beyond a reasonable doubt.[111] The Court stated that the reasonable doubt standard "plays a vital role in the American scheme of criminal procedure" and that it is "indispensable." [112] The Court later

review. *Blakely v. Washington*, 542 U.S. 296, 323, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (O'Connor, J., dissenting).

**105.** *Arsenault v. Massachusetts*, 393 U.S. 5, 6, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (quoting *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)); *see also McConnell v. Rhay*, 393 U.S. 2, 3, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

**106.** *McConnell*, 393 U.S. at 4, 89 S.Ct. 32.

**107.** *Arsenault*, 393 U.S. at 6, 89 S.Ct. 35.

**108.** *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) (quoting *Barber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)); *see also Roberts v. Russell*,

392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

**109.** This is not to say that any new rule interpreting the confrontation clause or the right to counsel necessarily requires full retroactivity. We cite these cases to demonstrate that the functions of the right to counsel and the right to confront witnesses are closely related to truth-finding in a way that the rule announced in *Blakely* is not.

**110.** *Smart v. State*, 146 P.3d 15, 30–31 (Alaska App.2006) (citing and discussing *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

**111.** *Winship*, 397 U.S. at 364, 90 S.Ct. 1068.

**112.** *Id.* at 363–64, 90 S.Ct. 1068.

held that the rule announced in *Winship* must be given retroactive effect.[113] But *Winship* focused only on the adjudicatory phase of the trial; the Court specifically noted that it did not "direct [its] attention to the post-adjudicative or dispositional process." [114]

Not every rule involving the reasonable doubt standard is as important as the rule announced in *Winship*.[115] In a case holding that *Apprendi* did not apply retroactively, the Ninth Circuit Court of Appeals reasoned that "[t]he rule[ ] announced in *Winship* ... [was] given retroactive effect because [it was] to 'overcome an aspect of the criminal trial that *substantially* impairs its truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts[.]' " [116] In contrast, and like the rule in *Apprendi*, the rule announced in *Blakely* affects the enhancement of a defendant's sentence after guilt is found beyond a reasonable doubt. Put another way, a defendant sentenced in violation of *Blakely* cannot complain that his entire conviction is tainted, only that the fact-finding underlying an aggravating sentencing factor might not have been accurate—a complaint that, given the heightened clear and convincing standard applied by judges before *Blakely*, does not raise serious questions about the accuracy of the sentence.

That a *Blakely* violation does not rise to the level of substantially impairing the truth-finding function of the criminal trial is also demonstrated by its remedy. A *Blakely* violation requires remand for resentencing. It does not require a new trial or vacating the conviction.[117] We think the Supreme Court of Minnesota stated this point well in its consideration of *Blakely:* "We are hard-pressed to see how a rule that, when violated, merely requires re-sentencing· can be said to be one without which the likelihood of an accurate conviction is seriously diminished." [118]

Because the standard-of-proof aspect of *Blakely* is dictated by the Federal Constitution, we also look to the federal courts for guidance. We find their logic persuasive even though the federal courts apply a different standard of full retroactivity. Every court of appeals that has dealt with the issue, whether calling it the *Blakely* or *Apprendi* rule, has concluded that the rule is procedural.[119]

A new procedural rule is only given fully retroactive effect under the federal standard if it is a " 'watershed rule [ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal

---

**113.** *Ivan V. v. City of New York*, 407 U.S. 203, 205, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972).

**114.** *Winship*, 397 U.S. at 359 n. 1, 90 S.Ct. 1068.

**115.** *See United States v. Sanchez–Cervantes*, 282 F.3d 664, 671 (9th Cir.2002). In *Sanchez–Cervantes* the Ninth Circuit held that *Apprendi* does not apply retroactively. *Id.* The court reasoned that "[t]he application of *Apprendi* only affects the enhancement of a defendant's sentence once he or she has already been convicted beyond a reasonable doubt. Therefore, it does not rise to the level of importance of *Winship* ...." *Id.*

**116.** *Id.* (quoting *Hankerson v. North Carolina*, 432 U.S. 233, 243, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (emphasis in original) ).

**117.** In contrast, a *Winship* violation calls into question the defendant's actual guilt or innocence because every fact necessary to constitute the crime was not proved beyond a reasonable doubt and would probably require vacating the sentence and remanding for a new trial. *See Winship*, 397 U.S. at 364, 90 S.Ct. 1068.

**118.** *State v. Houston*, 702 N.W.2d 268, 274 (Minn.2005) (internal quotations omitted) (apply-

ing *Teague* retroactivity standard and holding that *Blakely* is not retroactive).

**119.** *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir.2005) (concluding that *Blakely* is procedural rule); *United States v. Price*, 400 F.3d 844, 848 (10th Cir.2005) (*Blakely* is procedural); *Sepulveda v. United States*, 330 F.3d 55, 61 (1st Cir.2003) (referring to rule announced in *Apprendi* as "procedural mandate"); *Coleman v. United States*, 329 F.3d 77, 83 (2d Cir.2003) (*Apprendi* announced procedural rule); *United States v. Jenkins*, 333 F.3d 151, 154 (3d Cir.2003) (same); *United States v. Brown*, 305 F.3d 304, 309 (5th Cir.2002) (same); *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir.2002) (same); *United States v. Sanchez–Cervantes*, 282 F.3d 664, 665 (9th Cir.2002) (same); *United States v. Moss*, 252 F.3d 993, 998 (8th Cir.2001) (same); *McCoy v. United States*, 266 F.3d 1245, 1257 n. 16 (11th Cir.2001) (same); *United States v. Sanders*, 247 F.3d 139, 147 (4th Cir.2001) ("*Apprendi* constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial.").

proceeding."[120] The procedural rule must be one "without which the likelihood of an accurate conviction is seriously diminished."[121] If the beyond a reasonable doubt standard is a rule without which the likelihood of accurate sentences is seriously diminished, one would expect the federal courts to say so. To the contrary, every federal court of appeals which has addressed *Apprendi* has held that it did not create a watershed rule of criminal procedure.[122] One federal court of appeals recognized that the reasonable doubt standard rule "will promote marginally more accurate results" but held that the rule did not "alter our understanding of the bedrock elements essential to the fairness of a proceeding" such that it seriously diminishes the accuracy of guilty verdicts.[123] The courts addressing *Blakely* have likewise held that *Blakely* did not create a watershed rule of criminal procedure.[124] The logical conclusion to be derived from their treatment of *Apprendi* and *Blakely* is that *Blakely*'s reasonable doubt requirement is not a watershed rule or one without which the likelihood of an accurate sentence is seriously diminished.

We conclude that *Blakely* announced a procedural rule that does not raise serious questions about the fundamental fairness and accuracy of our criminal trials. The clear and convincing standard applied to Douglas and Smart did not seriously diminish the accuracy of fact-finding when they were sentenced. The purpose of *Blakely* is to ensure constitutional sentences—punishment matching the facts found by the jury—by requiring that aggravating factors be proved to a jury beyond a reasonable doubt. The right to jury findings and proof beyond a reasonable doubt is fundamental in our system of criminal procedure. But because the purpose of the rule announced in *Blakely* is not, under *Rutherford*, conclusive of full retroactivity, we must balance all three of the *Judd* factors.

### 2. The extent of reliance on the pre-*Blakely* rule

■ Although the court of appeals's decision did not balance the three factors of the *Judd* test, it nonetheless discussed the second and third factors.[125] The court stated that the second factor—extent of reliance—favored non-retroactivity because the state "relied for more than two decades on the presumed constitutionality of the sentencing procedures ... for proving the aggravating factors that increased a defendant's maximum sentence under Alaska's presumptive sentencing law."[126]

The state points out that the court of appeals upheld judicial fact-finding over twenty years ago and asserts that, before *Blakely* was published, "hundreds, if not thousands" of appellate opinions were issued without questioning this rule.[127] After *Ap-*

120. *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (citing *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (quoting *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion))).

121. *Id.* at 352, 124 S.Ct. 2519 (internal quotations omitted).

122. *See Sepulveda*, 330 F.3d at 61 (holding that *Apprendi* does not apply retroactively); *United States v. Swinton*, 333 F.3d 481, 491 (3d Cir. 2003) (same); *Coleman*, 329 F.3d at 90 (same); *Goode v. United States*, 305 F.3d 378, 382 (6th Cir.2002) (same); *Brown*, 305 F.3d at 310 (same); *Curtis*, 294 F.3d at 844 (same); *United States v. Mora*, 293 F.3d 1213, 1219 (10th Cir. 2002) (same); *McCoy*, 266 F.3d at 1258 (same); *Moss*, 252 F.3d at 997 (same); *Sanders*, 247 F.3d at 151 (same); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir.2000) (same).

123. *Sanders*, 247 F.3d at 150; *accord Moss*, 252 F.3d at 999 ("*Apprendi* appears no more 'impor-

tant' to a fair trial than rules previously addressed by the Court ... which the Court refused to apply retroactively[.]"); *Sanchez–Cervantes*, 282 F.3d at 669 ("We do not believe that requiring the jury to make ... determinations beyond a reasonable doubt will greatly affect the accuracy of convictions. Nor is this rule a bedrock procedural element.").

124. *Schardt*, 414 F.3d at 1036 (concluding that *Blakely* is not watershed rule); *Price*, 400 F.3d at 848 (same).

125. *Smart v. State*, 146 P.3d 15, 33–34 (Alaska App.2006).

126. *Id.* at 33–34.

127. The state cites the court of appeals's decision in *Huf v. State*, 675 P.2d 268, 271–73 (Alaska App.1984), as the initial case upholding judicial fact-finding.

*prendi,* the state argues, Alaska appellate courts continued to hold that presumptive sentencing was not affected by *Apprendi.*[128] The state correctly points out that *"Judd's* reasonable-reliance factor does not require state officials to predict the outcomes of 5–4 Supreme Court splits in evolving lines of case law."[129] Because the reliance on the pre-*Blakely* standards was reasonable and consistent for over twenty years, this factor militates against full retroactivity.

### 3. The effect on the administration of justice of applying *Blakely* retroactively

The court of appeals concluded that the third factor—the effect on the administration of justice of a retroactive application of *Blakely*—favored retroactivity.[130] The court noted that many of the defendants who were sentenced in violation of *Blakely* have completed their sentences and stated that "giving full retroactivity to *Blakely* would not affect the administration of justice in those cases."[131] The court then estimated that there were a "few hundred" cases that might be affected by *Blakely,* basing this estimate on the Appellate Court Clerks' Office statement that "slightly over 250 *Blakely* appeals [are] currently stayed and awaiting our decision of this retroactivity issue."[132] But based on the *Blakely* cases it had already decided, the court of appeals concluded that only a few defendants would be entitled to relief.[133] The court concluded that there would be a "relatively small impact on the criminal justice system" and that this factor favored retroactivity.[134]

■ *Judd* asks what effect retroactive application will have on the administration of justice, not how many appeals might be suc-

cessful. Full retroactive application thus looks at the entire number of retroactivity claims that will be brought and asks how those cases will affect the administration of justice. Review of even 250 cases would take up a great amount of court and staff time and it seems certain that there may be hundreds more cases that have not yet been brought back to the trial courts. We agree with the observations of Chief Judge Coats, who stated in dissent that "[d]efendants who conceded aggravating factors ... can claim that they would not have conceded [the factor] had they known they were entitled to a jury trial."[135] If a defendant's sentence is overturned, more time will be spent re-litigating aggravating factors. Prosecutors will have to reevaluate whether to bring the charges, old witnesses will have to be found, juries may have to be empaneled, court time will be spent relitigating, defense attorney and prosecutor time will be spent relitigating, and Department of Corrections time will be spent transporting convicted defendants to the courtroom. We think Chief Judge Coats correctly summarized the result as follows: "By making *Blakely* retroactive, we are not advancing an important constitutional principle. We are creating a major administrative problem. Whether a person gets his sentence reduced may turn more on good fortune than anything else."[136] We conclude that the burden factor weighs against full retroactivity.

### 4. Conclusion: no full retroactivity

■ Weighing all three factors of the *Judd* test is a difficult exercise. It is clear that many defendants received sentences that are inconsistent with *Blakely,* because aggravating factors were not proved to a

---

**128.** The state correctly cites *State v. Malloy,* 46 P.3d 949 (Alaska 2002), and *Wright v. State,* 46 P.3d 395 (Alaska App.2002), for this proposition.

**129.** We assume the state is referring to *Blakely* and *Apprendi,* both of which were 5–4 decisions. *See Blakely v. Washington,* 542 U.S. 296, 297, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey,* 530 U.S. 466, 468, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**130.** *Smart,* 146 P.3d at 34.

**131.** *Id.*

**132.** *Id.* There are currently 268 stayed cases.

**133.** *Id.* The court stated that out of thirty-five appeals, only two defendants were held entitled to relief. *Id.*

**134.** *Id.* at 35.

**135.** *Id.* at 44 (Coats, C.J., dissenting).

**136.** *Id.*

jury beyond a reasonable doubt. But defendants sentenced before *Blakely* were not deprived of procedural safeguards. The aggravating factors had to be proved by the elevated clear and convincing evidence standard. There is, as the Supreme Court stated in *Summerlin,* no reason to think judges are less accurate than juries in finding facts.[137] Furthermore, all actors in the criminal justice system relied on the old standard for over twenty years with no warning that it was unconstitutional. The sentencing guidelines provided notice to the defendants of the consequences of their acts and helped to ensure equal protection by providing uniformity. Finally, the administrative burden of full retroactive application would be overwhelming and would severely impact current criminal procedure by affecting the time all participants in the criminal justice system have available to spend on current trials. After considering the purpose of the procedural rule announced in *Blakely,* the reliance on the pre-*Blakely* rule, and the burden of full retroactive application of *Blakely,* we conclude that *Blakely* does not merit full retroactive application under the *Judd* standard.

### F. Other Issues

The parties and the amicus raise other related issues: whether we should adopt *Blakely* as a matter of state law; whether a *Blakely* claim is properly brought under

Alaska Criminal Rule 35(a) or Criminal Rule 35.1; and whether post-conviction relief actions are governed by the retroactivity standard in AS 12.72.010. We briefly address each of these issues in turn.

### 1. Should we adopt *Blakely* under Alaska law?

Smart, Douglas, and the amicus argue that we should adopt the *Blakely* reasoning as a matter of state law under the Alaska Constitution's due process and right to a jury clauses. Even if we were to adopt *Blakely* as a matter of state law, *Judd* would govern full retroactivity. The new standard would consequently not apply to Smart and Douglas. It is therefore not necessary to decide the issue here.

### 2. Are *Blakely* challenges properly brought under Alaska Criminal Rule 35(a)?

The state argues that a *Blakely* challenge is a claim that the manner or procedure of imposing the sentence was illegal, not that the sentence itself was illegal. The state points out that the term "illegal sentence" has been narrowly construed and argues that Rule 35(a) does not permit challenges to sentences that were imposed through procedures that were legally defective.[138] The state concludes that a *Blakely* challenge can only be brought under Rule 35.1.[139]

---

**137.** *Schriro v. Summerlin,* 542 U.S. 348, 355–56, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

**138.** The state relies heavily on the court of appeals's decision in *Bishop v. Municipality of Anchorage,* 685 P.2d 103 (Alaska App.1984). In *Bishop* the court stated that under Rule 35(a) "[t]he term 'illegal sentence' has been narrowly construed" and "applies only to sentences which the judgment of conviction did not authorize." *Id.* at 105.

**139.** Rule 35(a) states, "[t]he court may correct an illegal sentence at any time." Rule 35.1 in pertinent part states:

(a) **Scope:** A person who has been convicted of or sentenced for a crime may institute a proceeding for post-conviction relief under AS 12.72.010–12.72.040 if the person claims:
(1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;

(2) that the court was without jurisdiction to impose sentence;
. . . .
(7) that
(A) there has been a significant change in law, whether substantive or procedural, applied in the process leading to the applicant's conviction or sentence;
(B) the change in law was not reasonably foreseeable by a judge or a competent attorney;
(C) it is appropriate to retroactively apply the change in law because the change in law requires observance of procedures without which the likelihood of an accurate and fair conviction is seriously diminished; and
(D) the failure to retroactively apply the change in law would result in a fundamental miscarriage of justice, which is established by demonstrating that, had the change in law been in effect at the time of the applicant's trial, a reasonable trier of fact would have a reasonable doubt as to the guilt of the applicant. . . .

Smart and Douglas assert that Rule 35(a) is the proper means to bring a *Blakely* challenge. They argue that their sentences are "illegal" because each "exceeded the prescribed statutory maximum and were not authorized by either judgment of conviction."

We do not have to decide the issue. Because *Blakely* is not fully retroactive, neither the sentences nor the procedures used to impose the sentences were illegal.

### 3. Are post-conviction relief actions governed by the retroactivity standard in AS 12.72.010 and Rule 35.1?

The state argues that if a *Blakely* challenge must be brought under Rule 35.1, both Rule 35.1 and AS 12.72.010 adopt the *Teague* standard to determine whether *Blakely* is retroactive.[140] Because we hold that *Blakely* is not fully retroactive, we do not reach this issue and express no opinion about it.[141]

### IV. CONCLUSION

Applying Alaska's standard first announced in *Judd* to the present question of full retroactivity, we hold that *Blakely* is not retroactive as to defendants whose sentences were final when *Blakely* was decided on June 24, 2004. We therefore REVERSE the holdings of the court of appeals in *Smart v. State* and *Douglas v. State* and REMAND for proceedings consistent with this opinion.

---

**140.** The text of AS 12.72.010 is identical in pertinent parts to Rule 35.1. *See supra* note 139 for text. There are only a few minor differences in language between the two—for example "this state" in AS 12.72.010(1) and "Alaska" in Rule 35.1(a)(1).

**141.** There is likewise no reason to discuss the comment of the court of appeals that the legislature's adoption of a *Teague*-like analysis in AS 12.72.010 "raise[s] serious questions under the doctrine of separation of powers." *Smart v. State,* 146 P.3d 15, 29 (Alaska App.2006).